1 | **EDELSBERG LAW, P.A.**
Scott Edelsberg (State Bar No. 330990)
2 | scott@edelsberglaw.com
1925 Century Park E #1700
3 | Los Angeles, California 90067
Telephone: (305) 975-3320
4 |
**KOPELOWITZ OSTROW**
5 | **FERGUSON WEISELBERG GILBERT**
Jason H. Alperstein (*pro hac vice to be filed*)
6 | alperstein@kolawyers.com
Jeff Ostrow (*pro hac vice to be filed*)
7 | ostrow@kolawyers.com
Kristen Lake Cardoso (*pro hac vice to be filed*)
8 | cardoso@kolawyers.com
One West Las Olas, Suite 500
9 | Fort Lauderdale, FL 33301

10 | Attorneys for Plaintiff and the Proposed Classes

11 | (*Additional Attorneys Listed on Signature Page*)

12 |

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 |

16 | JAMES BETTLES, individually and on behalf of all others similarly situated,

17 | Plaintiff,

18 | v.

19 | TOYOTA MOTOR CORPORATION and TOYOTA MOTOR SALES, U.S.A., INC.,

20 |

21 | Defendants.

Case No.

<u>CLASS ACTION COMPLAINT FOR:</u>

(1) FRAUDULENT CONCEALMENT;
(2) UNJUST ENRICHMENT;
(3) VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
(4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;
(5) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;
(6) BREACH OF WARRANTY; and
(7) VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff James Bettles ("Plaintiff"), on behalf of himself and all other similarly situated members of the below-defined Nationwide Class and California Class he respectively seeks to represent (collectively, the "Class"), brings this action against Defendants Toyota Motor Corporation ("TMC") and Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "Defendants"), upon personal knowledge as to the factual allegations pertaining to himself and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.   INTRODUCTION

1.      Plaintiff brings his claims individually and on behalf of all persons or entities in the United States who purchased or leased a 2006-2020 Toyota Prius, 2017-2020 Toyota Prius Prime, 2010-2015 Toyota PHV, 2012-2016 Toyota Prius C, and 2012-2017 Prius V (the "Class Vehicles" or "Vehicles"), all of which were delivered by Toyota with an identical and inherent design defect in the Vehicle's Heating, Ventilation, and Air Conditioning System (the "Defective HVAC System").

2.      The defect, which was latent, but existed at the time that the Class Vehicles left Toyota's possession and control, permits the accumulation of moisture and microbial growth within the HVAC system, causing it to emit foul, noxious, and/or toxic odors into the Vehicle's passenger compartments and exposing the Vehicle's occupants to a safety risk from the mold and other contaminants that are emitted in the air circulated through the Defective HVAC System (the "HVAC Defect" or "Defect").

3.      One unsuspecting Prius owner described the odor as "an overpowering urine smell coming out of [his] vents," posting that "somehow an animal must have gotten into the engine, urinated and the urine and bacteria has built up somewhere in the car," exclaiming that "[it] is awful and that rides in my car smells it."  Others, such as Plaintiff, describe the odor as smelling like a pile of rank, sweaty socks.

4.      It is therefore no surprise that the HVAC Defect has resulted in numerous complaints to the National Highway Transportation Safety Administration ("NHTSA"), distributors, and Toyota dealerships across the country, as well as directly

to Defendants themselves, and has caused Toyota to issue numerous Technical Service Bulletins ("TSBs") to its exclusive network of distributors and dealerships describing the foul, noxious, and/or toxic odors being emitted from the Defective HVAC Systems.

5.     According to the World Health Organization ("WHO"), "[h]ealthy indoor air is recognized as a basic right," and exposure to mold can result in allergies, asthma, respiratory issues, upper respiratory problems, and immunological reactions. Thus, Plaintiff and Class members have been exposed to a real and serious health and safety hazard as a result of Toyota's wrongful conduct.

6.     Despite issuing several TSBs to its exclusive network of distributors and dealers, Toyota misrepresented the standard, quality, or grade of the Class Vehicles and knowingly, actively, and affirmatively omitted and concealed the existence of the Defective HVAC System to increase its profits by selling additional Vehicles and charging consumers for special filters, HVAC servicing, and other "repair" fees when consumers complained of the foul, noxious, and/or toxic odors.

7.     Knowledge and information regarding the Defective HVAC System and associated health and safety hazard the HVAC System Defect posed to Vehicle occupants was in the exclusive and superior possession of Toyota, its distributors, and dealers, and was not provided to Plaintiff and Class members, who could not reasonably discover the Defect through due diligence. Based on, amongst other things, consumer complaints to Toyota, distributors, dealers, and NHTSA, Toyota was aware of the Defective HVAC System and fraudulently failed to disclose such information about the Defect to Plaintiff and Class members.

8.     Notwithstanding this knowledge, TMS continued selling Class Vehicles with the Defective HVAC System and TMC continued to direct and/or approve of continued production and sales of the defective Vehicles.  Additionally, Toyota has refused to issue a recall and has not remedied the Defect and/or compensated Plaintiff or Class members for their damages resulting from the material Defect.  Rather, Toyota

1   wrongfully and intentionally concealed information about the Defective HVAC System
2   from Plaintiff and Class members.

3       9.      No reasonable consumer expects to purchase or lease a vehicle that
4   contains a Defective HVAC System that emits foul, noxious, and/or toxic odors into
5   the vehicle's passenger compartment or emits mold and other contaminants into the
6   vehicles, posing a health and safety hazard to vehicle occupants.  The Defect is material
7   to Plaintiff and Class members.  When Plaintiff and Class members purchased or leased
8   their Class Vehicles, they reasonably relied on their reasonable expectation that the
9   Class Vehicles would be free from defects and would not emit foul, noxious, and/or
10  toxic odors into the Class Vehicles' passenger compartments or pose a health and safety
11  hazard to Class Vehicle occupants.

12      10.     Had Toyota disclosed that the HVAC system in the Class Vehicles was
13  defective and would emit foul, noxious, and/or toxic odors into the Vehicles' passenger
14  compartment or pose a health and safety hazard to its occupants, Plaintiff and Class
15  members would not have purchased or leased their Vehicles or would have paid
16  significantly less for their Vehicles.

17      11.     As a result of the Defective HVAC System and Toyota's concealment
18  thereof, Plaintiff and Class members overpaid for their Class Vehicles, did not receive
19  the benefit of their bargains, were exposed to foul, noxious, and/or toxic odors and a
20  health and safety hazard, and were forced to incur additional expenses in an attempt to
21  remedy the Defective HVAC System in their Class Vehicles.

22      12.     To the extent Toyota has offered or provided odor mitigation to the Class
23  Vehicles pursuant to the TSBs or otherwise, those mitigation attempts have not provided
24  permanent repairs and the Vehicle's HVAC system remains defect.  Toyota has long-
25  acknowledged this fact, and continues to advise its dealers in the most recent TSB it
26  issued in March 2020, advising its dealers: "NOTE[:] The procedure in this bulletin will
27  NOT eliminate the odors described but is provided to help reduce intensity of the odors."

28

13.     Plaintiff and Class members assert claims against Toyota for fraudulent concealment, unjust enrichment, breach of warranty, and violations of the Magnuson-Moss Warranty Act, California's Unfair Competition Law, California's Consumers Legal Remedies Act, and California's Song-Beverly Consumer Warranty Act.

14.     As a direct result of Toyota's wrongful conduct, Plaintiff and Class members have been harmed and have suffered actual damages, including overpayment for their Class Vehicle, loss of use of their Class Vehicle, costs, and lost time associated with bringing in their Class Vehicle for diagnosis, repair, and replacement of components, and the actual costs of diagnosis, repair, and replacement components to address or repair the Defective HVAC System.

## II.     JURISDICTION AND VENUE

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Toyota, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.  This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. §1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

16.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because: Defendants maintain operational facilities in this District; a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; Defendants conduct a substantial amount of business in this District; and, at all relevant times, Defendant TMS was headquartered in this District. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in this District and venue is proper.

## III.     PARTIES

17.     Plaintiff is a citizen of California, residing in Sacramento, California. Plaintiff purchased a new 2016 Toyota Prius on December 3, 2016, at Maita Toyota of

Sacramento (the "Dealership"), an authorized Toyota dealer in Sacramento, California. Plaintiff purchased his Class Vehicle for personal, family, or household purposes, and continues to own the Vehicle.

18. Prior to purchasing the Class Vehicle, Plaintiff heard, viewed, and/or read Toyota marketing materials that touted the quality, durability, and comfort of Toyota's vehicles, including the Class Vehicle, and the sales representative and/or other personnel at the Dealership emphasized the quality, durability, and comfort of the Class Vehicle. Plaintiff asked the sales representative questions regarding the warranty being offered with the Class Vehicle and was assured that the warranty would cover all defects in the Class Vehicle for a period of three years or 36,000 miles. Plaintiff specifically inquired about the coverage afforded by the Class Vehicle's warranty, as he had been aggressively saving up to purchase a new home and wanted to ensure that he would not be financially responsible to address any defects in the Class Vehicle during the warranty period.

19. Plaintiff relied on the information regarding the quality, durability, and comfort of the Class Vehicle conveyed in Toyota's marketing commercials and by the sales representative, as well as the warranty information provided by the sales representative, in deciding to purchase his Class Vehicle.

20. In the Spring of 2017, Plaintiff began noticing a foul odor emanating from the air-conditioning ("A/C") vents of the Class Vehicle. At first, Plaintiff thought that the odor was being caused by the shoes and/or socks he was wearing, and proceeded to wash his socks for several cycles to make sure they were clean, and thereafter purchase new footwear. The foul odor persisted, however, and, in fact, became worse as Summer 2017 approached.

21. Approximately six months after Plaintiff purchase the Class Vehicle, he brought the Vehicle in to the Dealership for its first service. Plaintiff advised the service representative of the foul odor that had been emanating from the A/C vents, as well as his attempts to figure out its cause. The service representative stated that the issue

5

1    would be looked into, however, when the Class Vehicle's service was completed,

2    Plaintiff was told that the Dealership could not find anything wrong with the Class

3    Vehicle's HVAC system.

4         22.    The odor emanating from the Class Vehicle's A/C vents became

5    increasingly more-foul during that summer, and Plaintiff recalls that the Class Vehicle

6    began to smell "like a pile of party socks that had been sitting too long in a damp, warm

7    locker room."   Given that the Dealership was either unable, or unwilling, to help

8    Plaintiff, his only solution to reduce the foul odor was to drive with the windows down

9    until it dissipated, which could take anywhere from 30 seconds to several

10   minutes.  Plaintiff recalls that the smell would seem to get worse when he switched

11   from A/C mode to regular fan mode, or if the Class Vehicle had been running then

12   sitting while he went inside a store or restaurant, then came back out and started the

13   Vehicle again.   Other times the foul odor would hit Plaintiff and other Vehicle

14   occupants immediately upon a cold start.

15        23.    Plaintiff reported the foul odor again to the Dealership approximately one

16   year after he purchased the Class Vehicle, in or around December 2017, when he

17   brought the Vehicle in for the next service appointment.   Once again, however,

18   Dealership personnel inspected the Class Vehicle and thereafter told Plaintiff they could

19   not find anything wrong with the HVAC system in his Vehicle, and were unable to

20   provide any information as to the cause of the foul odor Plaintiff had been experiencing.

21   Plaintiff then requested to speak with a supervisor, who seemed ambivalent about the

22   foul odor Plaintiff had been experiencing, but nonetheless agreed to inspect Class

23   Vehicle's in an effort to diagnose the problem.

24        24.    After the supervisor advised that there was no problem with the Class

25   Vehicle, Plaintiff advised the supervisor of his belief that a defect in the Class Vehicle

26   was causing the foul odor to emanate from the Vehicle's HVAC System and that the

27   warranty accompanying the sale of his Vehicle requires Toyota to repair the defect.  In

28   response, however, the supervisor advised Plaintiff that the warranty only covered

defects that the Dealership could observe or validate, and because the odor could not be detected at the time Plaintiff brought his Vehicle into the Dealership, the Dealership would not offer Plaintiff any type of warranty repair.  Instead, the supervisor said that his only option was to replace the filter of the Class Vehicle, making clear that doing so would only provide temporary relief, and that Plaintiff could also mitigate the foul odor with disinfectants or air-freshers if he was "too sensitive" to the smell.

25.    Plaintiff then explained that the only way to replicate the foul odor would be to replicate the driving activity that leads to the odor, as described by Plaintiff above. The supervisor replied, however, that they did not have time to do so, and repeated that if the "smell issue was so important" to Plaintiff, then he could buy special carbon filters and/or spray disinfectant or air refresher into the Class Vehicle's HVAC system, all of which would, at best, be temporary fixes—for which he would be responsible, notwithstanding that his Vehicle was in warranty.

26.    Notably, after Plaintiff advised that those purported salutations were not acceptable and that the Toyota was not honoring its warranty, the supervisor exclaimed that there have been "thousands of similar complaints about smells from these kinds of cars, and that there is no fix," acknowledging that the foul odor being caused by the Defective HVAC System was a known problem.  After Plaintiff pointed out the inconsistency in the supervisor's admission of the problem with her earlier statements that denied the existence of a problem and unwillingness to take action to appropriate inspect his Class Vehicle, the supervisor advised Plaintiff: "Perhaps we are not the right dealership for you.  You can have your car serviced at other [non-MAITA] Toyota dealerships."  The conversation ended shortly after that, and Plaintiff returned home with his Class Vehicle.  The foul odors have continued to emanate from the Defective HVAC System on a period basis since that time, and continue to this day.

27.    Toyota failed to disclose the Defective HVAC System to Plaintiff before he purchased his Class Vehicle, despite Toyota's knowledge of the Defect, and Plaintiff, therefore, purchased his vehicle on the reasonable, but mistaken, belief that it would be

a high quality and durable vehicle that would retain its value. Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Defective HVAC System and its emission of foul, noxious, and/or toxic odors or mold.

28.     Given the Defect, Plaintiff has been exposed to foul, noxious, and/or toxic odors emitted from the Defective HVAC System in his vehicle, including a "smell which smells like rotten socks" when using or turning off the air conditioner. Plaintiff first experienced the smell within three to four months after he purchased his Class Vehicle. Plaintiff brought his Class Vehicle to the Dealership several times to repair the smell; however, the Dealership claimed it could not find the source of the issue. Since the Dealership could not remedy the problem in his Class Vehicle, Plaintiff has been left without recourse and continues to experience foul and noxious odors emanating from the Defective HVAC System when operating his Vehicle.

29.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Toyota's misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, the value of his Class Vehicle has been diminished as a result of the Defective HVAC System, and he has had to pay out-of-pocket expenses to remedy the Defect (which have not resolved the issue).

30.     None of the advertisements reviewed or representations received by Plaintiff or Class members contained any mention or disclosure of the Defective HVAC System and its associated health and safety hazard.

31.     Neither Toyota nor any of their agents, distributors, dealers, or other representatives informed Plaintiff and Class members of the HVAC System Defect and its associated health and safety hazard prior to Plaintiff's and the Class members' purchase or lease of the Class Vehicles.

32.     When Plaintiff and Class members purchased or leased their Class Vehicles, they relied on the reasonable expectation that the Class Vehicles would be equipped with an HVAC system that was free from defects, safe to operate, and would

not pose a threat to their health or safety.  In fact, Toyota has always emphasized the quality and reliability of the Class Vehicles, knowing that consumers, including Plaintiff and Class members, rely upon such representations when purchasing or leasing vehicles. Had Toyota disclosed that the Defective HVAC System in the Class Vehicles could lead to the emission of foul, noxious, and/or toxic odors and air filled with mold and other contaminants into the passenger compartment, posing a health and safety hazard to vehicle occupants, Plaintiff and Class members would not have purchased or leased their Class Vehicles or would have paid significantly less for their respective vehicles.

33.     Plaintiff and Class members operated their Class Vehicles in a reasonably foreseeable manner and as the Class Vehicles were intended to be used.  Plaintiff and Class members have suffered an ascertainable loss as a result of Toyota's unfair and deceptive conduct, breach of common law and statutory duties, and omission and/or misrepresentations associated with the Defective HVAC System and its associated health and safety hazard, including but not limited to, out-of-pocket losses and diminished value of their Vehicles.

**B.    Defendants**

34.     TMC is the world's largest automaker and largest seller of automobiles in the United States.  TMC is a Japanese Corporation headquartered in Toyota City, Aichi Prefecture, Japan.  TMC is the parent company of TMS and conducts business in this District.

35.     TMS is a California corporation with its principal place of business in Plano, Texas.  TMS is responsible for the manufacture, distribution, and sale of all Toyota vehicles in the United States.

36.     At all times relevant to this action, Toyota manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Toyota brand name throughout the United States.

37.     Toyota developed and disseminated the owner's manuals, warranty booklets, maintenance schedules, advertisements, and other promotional and technical

materials relating to the Class Vehicles to Toyota distributors and dealers, which were then disseminated to Plaintiff and Class members.

### IV.   FACTUAL ALLEGATIONS

#### A.   The Defective HVAC System

38.   A basic air conditioning system, such as the HVAC system in the Class Vehicles, contains components to push refrigerants through a closed system to extract heat out of the vehicle interior and transfer that heat to the outside air during which process the refrigerant changes from a liquid to a gas and then back to a liquid.

39.   As shown below, the HVAC system has a high-pressure side (shown in red), which includes the compressor, condenser and the receiver/drier, and a low-pressure side (shown in blue), which includes the expansion valve and the evaporator. The expansion valve controls the flow and pressure of liquid refrigerant into the evaporator, and a blower draws air through the evaporator to cool and dehumidify the interior air.  As cold refrigerant passes through into the evaporator, it absorbs heat from the air and produces condensation, which is intended to drain from the HVAC system through a rubber hose onto the ground.



40.     However, the Defective HVAC System in the Class Vehicles fails to adequately remove or drain the condensed water from the evaporator and surrounding enclosure, trapping the water in the Defective HVAC System.  The resultant moisture creates an environment susceptible to the growth of mold and other contaminants and leads to the development of a foul, noxious, and/or toxic odor and mold and other contaminants, which are emitted into the passenger compartment of the Class Vehicles by the blower.

41.     In 2004, the Institute of Medicine ("IOM") found there was sufficient evidence to link indoor exposure to mold: with upper respiratory tract symptoms, coughing, and wheezing in otherwise healthy people; with asthma symptoms in people with asthma; and with hypersensitivity pneumonitis in individuals susceptible to that immune-mediated condition. The IOM also found limited or suggestive evidence linking indoor mold exposure and respiratory illnesses in otherwise healthy children. Other studies have shown a potential link between mold exposure and the development of asthma in children.

42.     According to the WHO's Guidelines for Indoor Air Quality: Dampness and Mold, "[m]icrobial pollution involves hundreds of species of bacteria and fungi that grow indoors when sufficient moisture is available" and "[e]xposure to microbial contaminants is clinically associated with respiratory symptoms, allergies, asthma and immunological reactions."

43.     No reasonable consumer expects to purchase or lease a vehicle with a HVAC System Defect that exposes them to foul, noxious, and/or toxic odors, mold, and other contaminants.  Further, Plaintiff and Class members do not reasonably expect Toyota to conceal a defect in the Class Vehicles or conceal a known health and safety hazard.  Plaintiff and Class members had no reasonable way to know that Class Vehicles contained Defective HVAC Systems, which were defective in materials, workmanship, design, and/or manufacture and posed a serious and real health and safety hazard.

44. As a result of Toyota's material misrepresentations and omissions, including its failure to disclose that the Class Vehicles contain an HVAC System Defect, Plaintiff and Class members paid more for their Class Vehicles than they would have and suffered other actual damages, including but not limited to, out-of-pocket expenses, diminished value of their vehicles, and exposure to foul, noxious, and/or toxic odors and mold and other contaminants.

### B.    Defendants' Knowledge of the Defective HVAC System

45. Toyota fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiff and Class members the Defect in the Class Vehicles even though Toyota knew of the Defective HVAC System in the Class Vehicles.

46. Knowledge and information regarding the Defective HVAC System were in the exclusive and superior possession of Toyota, and its distributors and dealers, and that information was not provided to Plaintiff and Class members.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Toyota and it's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair orders and parts data received from the dealers, consumer complaints to NHTSA, and testing performed in response to consumer complaints, *inter alia*, Toyota was aware of the Defective HVAC System in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiff and Class members.

47. Defendants knew that the Defective HVAC System and the associated safety risk was material to owners and lessees of the Class Vehicles and neither known nor reasonably discoverable by Plaintiff and Class members before they purchased or leased Class Vehicles or within the applicable warranty periods.

48. Notwithstanding its exclusive and superior knowledge of the Defective HVAC System, Toyota failed to disclose to and intentionally concealed the Defect from consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continues to sell Class Vehicles containing the Defect.

### a.      TSBs Identifying the Defective HVAC System

49.     The potential for HVAC odor has long been a known issue to Toyota even outside the context of the Class Vehicles at issue here.

50.     As early as 1997, Toyota issued a TSB AC002-97, titled "Air Conditioning Evaporator Odor," that explicitly acknowledged the presence of microbial growth in the HVAC evaporator caused by dampness in the housing, describing the result as a "musty odor ... emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity." This TSB noted that the odor could result from "[b]lockage of the evaporator housing drainpipe, resulting in the buildup of condensate" or "[m]icrobial growth in the evaporator, arising from dampness in the evaporator housing where the cooling air flow is dehumidified."

51.     On or around August 6, 2009, Toyota issued T-SB-0261-09, titled HVAC Odor, which specifically related to HVAC odors for 2004-2008 model year Prius and 2007-2010 model year Camry vehicles.  The TSB stated: "Some Camry, Camry HV, and Prius models may exhibit an intermittent HVAC system odor.  A newly designed evaporator sub-assembly has been made available to decrease the potential for HVAC odor."  T-SB-0261-09 further stated that "[t]his repair is covered under the Toyota Comprehensive Warranty… in effect for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date."

52.     On or around November 29, 2011, Toyota issued a revision to the August 6, 2009, T-SB-0261-09 Rev1, updating production change information and again informing dealers that a newly designed evaporator sub-assembly had been made available to decrease the potential for HVAC odor.  The revised TSB again stated that "[t]his repair is covered under the Toyota Comprehensive Warranty…in effect for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date."  It also noted, however, that "[w]arranty application is limited to occurrence of the specified condition described in this bulletin.

53.     On or around September 12, 2013, Toyota issued T-SB-0142-13, titled HVAC Odor Maintenance, which explicitly informed its dealers that the HVAC odors were normal, "naturally occurring from the HVAC system and/or related environmental factors."  In addition, the TSB, which identified the Defective HVAC System in Prius and Camry vehicles through model year 2014, explicitly informed dealers that "*there is no way to eliminate these odors*" and instructed them to "follow the General Procedure in this bulletin to minimize the odors experienced."  To ensure that its dealers where abundantly clear on this point, Toyota stated above the first step of the "General Procedure" dealers were to follow:

> **NOTE**
>
> **This procedure will NOT eliminate the odors experienced, but it's provided to help reduce the intensity of these odors.**

54.     Toyota updated T-SB-0142-13 on April 9, 2015 to include model year 2015 Prius and Camry vehicles and, again, on November 10, 2016, to include model years 2016-2017 of those vehicles.  Although Toyota updated the November 10, 2016 TSB on or around February 6, 2020, to exclude 2016 and 2017 model year Prius vehicles; on or around March 10, 2020, Toyota issued T-SB-0022-20, also titled "HVAC Odor Maintenance," which not only included those model year vehicles, but also added model year 2018-2020 Prius vehicles.

55.     Like the prior TSBs on this issue, it states that HVAC System odors are "naturally occurring" and advises distributors and dealers to "[f]ollow the General Procedure in this bulletin to minimize the odors experienced."  The TSB also includes detailed steps for distributors and dealers to follow regarding the A/C Evaporator Cleaning Procedure With Toyota Genuine A/C Refresher Kit, which are also included in a Tech Tip issued by Toyota on October 15, 2019 (T-TT-0577-19).

56.     While dealers and distributors received copies of the above-described TSBs, Plaintiff and Class members never received copies of or the information contained in the TSBs described above. Upon information and belief, the TSBs were

not directly communicated to consumers, including Plaintiff and Class members. Thus, despite Toyota's knowledge of the HVAC System Defect and associated health and safety hazard, which Toyota recognized was present in Class Vehicles, Toyota failed to disclose the HVAC System Defect to owners and lessees of the Class Vehicles, including Plaintiff and Class members, and instead, intentionally concealed the HVAC System Defect. Moreover, Toyota failed to provide an effective remedy for or replacement of the Defective HVAC System.

**b.    Complaints Describing Symptoms of the Defective HVAC System**

57.    Toyota knew about the Defective HVAC System in the Class Vehicles based on the voluminous complaints consumers filed with NHTSA and elsewhere.

58.    Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA that identify the Defective HVAC System and detail their experience with the symptoms it causes.

59.    Federal law requires Toyota to monitor defects which can cause a safety issue and report them within five (5) days.  Toyota regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the Defect through these complaints.  Toyota also had knowledge of the Defect in the Class Vehicles through complaints made by owners and lessees of other Toyota vehicles, including the Toyota Camry, which contains the same Defective HVAC System.

60.    Below are excerpts of a small sample of consumer complaints made to NHTSA regarding the Defective HVAC System:

- **<u>June 26, 2002 – 1999 Toyota Camry</u>**

    *THE AIR CONDITIONER SMELLS WHEN USING IT. IT SMELLS LIKE MOLD. II [sic] HAVE TAKEN IT TO THE DEALER, BUT ALL THEY DO IS SPRAY IT WITH FRIGI-*

*FRESH, WHICH ONLY MASKS THE SMELL FOR A SHORT WHILE.*

- **September 20, 2004 – 2001 Toyota Camry**

  *MY WIFE'S 2011 TOYOTA CMRY [sic] HAS AN AIR CONDITIONER ODOR. WE HAVE BEEN LEAD [sic] TO BELIEVE THAT IT MAY BE CAUSED BY THE A/C GETTING TOO COLD, FREEZING UP, AND ACTUALLY CAUSING MOLD IN THE A/C SYSTEM.* SHE HAS DRIVEN THE CAR FOR 2 1/2 YEARS AND NOW HAS CANCER. WE HAVE BEEN UNABLE TO DO ANYTHING TO RID THE CAR OF THE ODOR. DOESN'T EXPOSURE TO MOLD, IF SO, CAUSE HEALTH PROBLEMS? WE SPENT A YEAR TRYING TO LOCATE AN ODOR IN THE CAR. REPLACED MATS, DETAILED THE UPHOLSTRY, ETC.

- **February 13, 2007 – 2002 Toyota Camry**

  MY 2002 CAMRY HAS BEEN A GREAT CAR *EXCEPT FOR THE FOUL ODOR COMING FROM THE AIR CONDITIONER. I HAVE CONTACTED THE DEALER AS WELL AS TOYOTA ABOUT THIS PROBLEM SEVERAL TIMES BUT NOTHING HAS BEEN FIXED.* WE ARE STILL DEALING WITH THE ODOR FROM THE AIR CONDITIONER.

- **October 18, 2018 – 2000 Toyota Camry**

  *I HAD A PASSENGER WHO REMARKED THAT THERE WAS A SULFUR SMELL IN PASSGENER [sic] COMPARTMENT OF CAR WHEN RECIRCULATION AIR IS SWITCHED ON.* I HAD NOTICED IT BEFORE BUT DIDN'T KNOW WHAT TO THINK ABOUT IT. *I'VE HAD LOTS OF MIGRAINE HEADACHES OVER THE PAST 5 MONTHS.* WHEN I MENTIONED TO A MECHANIC HE SAID IT WAS PROBABLY DUE TO THE SULFUR DIOXIDE POISONING ME.

- **September 22, 2013 – 2010 Toyota Camry**

  *WHEN I OPERATE MY HEAT OR AIR CONDITIONING IN MY 2010 TOYOTA CAMRY I GET A STRONG SMELL OF SULFUR IN THE PASSENGER COMPARTMENT OF MY CAR*. I OWNED MY CAR FOR 4 YEARS NOW AND THE PROBLEM STARTED ABOUT 3 YEARS AGO. NO ONE CAN TELL ME THE EXACT CAUSE OF THE PROBLEM.

- **February 26, 2014 – 2013 Toyota Camry**

  2013 TOYOTA CAMRY. CONSUMER WRITES IN REGARDS [sic] TO HVAC ASSEMBLY AND AC SYSTEM ISSSUES. *SMD THE CONSUMER STATED THE VEHICLE WAS TAKEN TO THE DEALER ON 4 SEPARATE OCCASSIONS, FOR THE ODOR ISSUE COMING FROM THE AC AND THE MILDEW AND FUNGUS GROWTH IN THE PADDING AND CARPET.

- **May 17, 2014 – 2012 Toyota Camry**

  *FOR THE PAST SEVERAL MONTHS MY 2012 CAMRY A/C UNIT RELEASES A FOUL MILDEW ORDER [sic]. IN-PASSENGER COMPARTMENT FILTER AS WELL AS OZONE DEPLETION SPRAY WAS COMPLETED TWICE OVER THE SPAN OF ONE WEEK AT CROWN TOYOTA, HOWEVER THE FOUL SMELL SHORTLY REAPPEARS WHEN THE CAR IS TURNED ON.*

- **November 23, 2014 – 2014 Toyota Camry**

  *WHEN STARTING VEHICLE AND TURNING ON A/C A VERY FOUL ODOR OF MILDEW AND MOLD COMES FROM THE VENTS. WE HAVE TAKEN IT BACK TO THE DEALERSHIP FOR A CLEANING*

***AND REPLACED THE FILTER WITH A CARBON ONE AT THE DEALERSHIP AT OUR EXPENSE. THIS DID NOT FIX THE ISSUE.*** WE FOLLOW INSTRUCTIONS OF FUNNING [sic] AC IN NON RECIRCULATING [sic] MODE TO NO AVAIL. TOYOTA DOES NOT SEEN [sic] TO WANT TO TAKE OWNERSHIP OF THE ISSUE. I AM CONCERNED OF [sic] OUR HEALTH FROM INHALING THESE MOLD SPORES AND BACTERIA.

- **December 4, 2015 – 2013 Toyota Camry**

  CAR HAS ONLY 17000 MILES. ***TERRIBLE ODOR FROM THE A/C AND HEATING VENTS. DEALER RECOMMENDS A CLEANER AND FILTER CHANGE COSTING ME 140.00 DOLLARS.*** WHY IS THIS SMELL HAPPENING? IS IT MOLD? VERY UNHEALTHY.

- **December 19, 2015 – 2012 Toyota Camry Hybrid**

  STRONG MOLD SMELL FROM AIR VENTS. ESPECIALLY STRONG FOR FIRST 15 MINUTES OF DRIVING.

- **June 9, 2016 – 2014 Toyota Camry Hybrid**

  PURCHASED A 2014.5 [sic] TOYOTA CAMRY XLE HYBRID ON NOVEMBER 3, 2014. ***RECENTLY, THE VEHICLE EMITS A FOUL ORDER [sic] WHEN THE AIR CONDITIONER IS TURNED ON. I TOOK IT TO A LOCAL DEALERSHIP WHO TRIED TO TELL ME THAT ALL CARS HAVE THIS PROBLEM.*** I SEE THERE IS A CLASS ACTION LAWSUIT FOR 2012 MODEL YEAR VEHICLES, AND TOYOTA IS STILL PRODUCING VEHICLES WITH THIS PROBLEM. THE DEALERSHIP OFFERED TO DO A FORM CLEAN OF THE SYSTEM AND INSTALL A CHARCOAL FILTER FOR THE TUNE OF $150

WITHOUT ANY GUARANTEE THAT WHIS [sic] WOULD EVEN FIX THE PROBLEM.

- **October 19, 2017 – 2017 Prius Plug-In Hybrid**

  THE AIR CONDITIONER EMITS A FOUL SMELL WHEN STARTING AND WHILE DRIVING. HAVE MANY NEW CARS AND NEVER HAD THIS CHRONIC PROBLEM. TOOK THE CAR TO THE DEALER AND WAS TOLD THAT THIS WAS A RECURRING PROBLEMS WITH TOYOTA. TRADED IN 2015 PRIUS WITH 36000 MILES FOR THE PRIUS PRIME AND NEVER HAD A AIR CONDITIONING PROBLEM WITH THAT PRIUS.

- **December 2, 2017 – 2016 Prius[1]**

  UPON START UP THIS TOYOTA PRIUS VEHICLE ***EMITS FOUL SMELLING CHEMICAL AIR INTO THE CABIN OF THE VEHICLE. IT IS UNKNOWN HOW TOXIC THESE SMELLS ARE BUT AGGRAVATE RESPIRATORY CONDITIONS AND ASTHMATIC CONDITIONS. TOYOTA ACKNOWLEDGES THAT THEY HAVE A SERVICE BULLETIN WITH "THOUSANDS" OF COMPLAINTS FROM CONSUMERS REPORTING NOXIOUS AIR BEING EMITTED INTO THE CABIN OF THE VEHICLE.*** HOWEVER THEY ARE REQUIRING CONSUMERS TO PAY FOR FIXES, EVEN IF THE CONSUMER HAS A FULL WARRANTY FOR MANUFACTURER DEFECTS. THIS VEHICLE ONLY HAS ABOUT 9.2K MILES ON IT (2016) AND IS GETTING WORSE. THE PROBLEM ALWAYS HAPPENS

---

[1] In fact, Plaintiff submitted this complaint to NHTSA shortly after his terrible experience at the Dealership where its supervisor acknowledged that Toyota had received "thousands of similar complaints," yet denied there was a Defect and refused to properly inspect his Class Vehicle so a warranty claim could be made, effectively telling Plaintiff that her Dealership was not prepared to help him, despite selling him the Class Vehicle and concealing the Defect in the process.

ON VEHICLE START UP WHEN AT REST, ESPECIALLY IN WARM AMBIENT CONDITIONS. THE AC WILL BE FOUL AND NOXIOUS. IN COLD TEMPERATURES THE FIRST FEW MINUTES OF HEATING WILL ALSO EMIT FOUL AND NOXIOUS ODORS. SERVICE LINE AT DEALERSHIP ACKNOWLEDGE THESE COMPLAINTS ARE HERE BUT WILL NOT EFFECT REPAIRS UNDER DIRECTION OF TOYOTA CORPORATE. ALL REPAIRS FOR MANUFACTURING DEFECT FOR TOXIC AIR HAVE TO BE PAID FOR BY THE CUSTOMER.

- **August 18, 2017 – 2012 Prius V**

WHILE DRIVING VARIOUS SPEEDS, THE AIR CONDITIONER WAS ACTIVATED AND THERE WAS A STRONG ODOR IN THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER . . . WHERE IT WAS DIAGNOSED THAT THE ODOR WAS DUE TO MOLD. THE DEALER CLEANED THE VENTS AND THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED SEVERAL OTHER TIMES. THE VEHICLE WAS TAKEN TO THE SAME DEALER, BUT THEY USED THE SOLUTION TO CLEAN THE VENT THE SECOND TIME. THE VEHICLE WAS REPAIRED, BUT THE FAILURE STILL OCCURRED.

61.   Owners and lessees of the Class Vehicle have also complained about the Defective HVAC System on various Internet forums:

- **Carcomplaints.com – September 1, 2015 – 2015 Prius C**

I had a Prius C 2013 before and it had the smell kind of smell whenever I turned on the A/C or just the fan. I took it to the dealership and they said it was because lots of dust was collected in there. Now I have another Prius C 2015 for just 4 months and I notice the same smell came back about a month ago.

What could really be the cause? It smells so bad that I rather have the windows open instead of turning on the A/C.

- **Cargurus.com – November 4, 2016 – 2015 Prius C**

  Anyone else experiencing the mold smell from vents. Worse on humid days. Bought a brand new 2015 and it started smelling of mold around 5,000 miles. They have done all the useless stuff like changing the cabin filters and cleaning the evaporator hose etc. Now they are saying that Toyota says customers should pay over $100[.]00 every 10,000 miles to change the cabin filter and do the cleaning kit in evap hose [sic]. They are also saying they know this is not a total fix but it might help control the odor. MOLD IS DANGEROUS. I have never had headaches, sinus issues and skin breakouts like I have since buying this Prius. I LOVE the car but can't handle this smell. I've also been told to turn the air conditioner off and the recirculate air off before turning the car off. This does appear to help to only a certain degree (when I remember to do it) but other times it doesn't seem to make a difference. Shame on Toyota for not fixing this issue.

- **Priuschat.com – October 19, 2015 – 2015 Prius**

  I have a 2015 Prius. when I operate the ventilation system without using the AC, and the air on by-pass I get a rear bad smell. In reading other forums this appears to be a known issue. Has anyone found a solution through Toyota? With 6500 mile I should not be needing to spray disinfectants etc into the ac system.

62. Customer complaints posted on Priuschat.com, which according to the website, "has been the go-to spot for Prius, hybrid, and EV discussion for over 10 years," are very descriptive when identifying the nature of the foul odor in their Class Vehicles:

- ***The shame of it! Embarrassing AC odor. Kind of like a ripe sweat sock,*** when first starting up the AC

or after turning the compressor off and running the fan for a while.  Any ideas? The Prius is new since mid-May with about 2200 miles on it. (April 10, 2005 – 2005 Prius)

- OK! I just bought a 2005 Prius and it smells! Before I test drove a RAV4 from 2006 and felt the same smell. Did anybody reach to a solution. And btw, I am 90% (I grew up in a farm) the **it smells like SHEEP**. (October 1, 2009 – 2005 Prius)

- I realize there are several posts on this as I have read every thread. However, no one seems to have given a reason for what is causing the problem. I have called several Toyota dealers as well asking about it and they have no idea what I'm talking about. **The smell is the "horse" smell others have described. I don't know if it is a horse or straw smell, but, it smells like a horse stall. The smell permeates my wife's clothes and she is not enjoying the car for this reason**. (October 15, 2010 – 2008 Prius)

- **I have a Prius 2006 and everyone tells me that is smells like "band aids"** - exactly as you described it. Some say it smells like a new car smell. I think it somewhat in between, but **the band-aid smell does in fact get worse in damp or wet weather as you also described**. The interior of my car is leather. I theorized at one time that it was the "rubber" smell from the spare tire and that somehow the smell of that was making it's way into the cabin area, but I have since decided that is not the case and more than likely the seat material. As far as the other odors that people are describing (electrical wires burning or other), I do not liken this band-aid smell to that, so suspect those are other odor issues. (March 20, 2013 – 2013 Prius)

- **The previous owner had several large dogs and they were in the car quite often. There is a very strong smell that permeates the car when I turn on the fan. It is not as strong when I only use the AC without the fan. I am just guessing it is**

*related to the dogs*; I am not totally sure. Does anyone know how I can totally get rid of this odor? It is so strong I am considering not keeping the car if I cannot get rid of it. (June 1, 2021 – 2017 Prius)

63.     In fact, querying the word "smell" in the search function on Priuschat.com produces dozens of threads dedicated to discussing the Defective HVAC System in the Class Vehicles, a sample of which can be found below:

- Funky Mouldy [sic] smell from A/C vents
- Foul Smell When Air Conditioner is Turned ON
- My whole car stinks (2007)
- Musty Smell From A/C
- Rotten Egg or Natural Gas smell coming from A/C
- Do all Gen 2 cars have a mold problem?
- 2007 Prius A/C Vent Odor (smells like dirty socks)
- Mildew under rear passenger carpet
- Does your AC Smell
- Musty Smell From A/C
- Strange smell from heating
- I hate the smell of mildew in the morning …

64.     A November 1, 2012 post by a consumer on Justanswer.com details just how foul and disgusting the odor emanating from the Defective HVAC System can be to its occupants, as well as Toyota's inability to properly remove the odor it causes:

**Toyota Prius: I have an overpowering urine smell coming out…**
*I have an overpowering urine smell coming out of my air vents. Has been for nearly a year now.* I have changed the cabin filter, flushed the AC system, and sprayed lysol through the intake air vents. The smell occurs when running the air vents with outside air intake set to on (not when closing the air loop and recirculating air.) *Somehow an animal must have gotten into the engine, urinated and the urine and bacteria has built up somewhere in the car. It is awful and everyone that rides in my car smells it.* Yesterday I took it to a Toyota dealer and their only suggestion was replacing the heater coil and AC system at a

cost of $3,000 since they think the urine and bacteria have infiltrated these systems. They said Toyota issued a new repair bulletin to replace AC systems that have tighter seals to prevent this type of problem. My car only has 50,000 miles on it and I am beyond despair with this situation since I own the car.

**C.    Prior Litigation Involving the Toyota Prius**

65.    Toyota also knew about the Defective HVAC System in the Class Vehicles based on *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035, filed in this Court on January 3, 2017, where a California plaintiff who had purchased a new 2014 Toyota Prius brought claims stemming from Toyota's failure to disclose the same Defective HVAC System at issue in this case.

66.    The plaintiff in *Stockinger* alleged that his Class Vehicle contained the Defective HVAC System, which exposes drivers and passengers to mold and other contaminants, and that as a result of the Defect, the plaintiff "had experienced incidents where he and occupants of his vehicle have been exposed to noxious and foul odors emitted from the Defective HVAC System."

67.    Testimony from that plaintiff's deposition in *Stockinger* confirms the severity of the "noxious and foul odors" alleged, describing the smell as "obnoxious," like "mold" or a "fungus smell," similar to "stagnant water" in an "old house" with "no ventilation for a long time[,]" like a "burning inspect smell"---a "very bad smell," which she added was constant and lingered for the whole ride.

68.    Publicly available internal Toyota documents filed in that case show not only that Toyota knew that its HVAC systems needed to be redesigned to fix the Defective HVAC System, even engineering small, incremental improvements, but none of these engineering changes was sufficient.  Instead, as Toyota's Cross-Car Line Manager observed, a "complete solution" to Toyota's HVAC odor problem "would require a new design of the HVAC evaporator box for all of our vehicles."

**D.    Distributor and Dealer Communications Acknowledging Customer Complaints and the Defective HVAC System**

69.     Evidence submitted in *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV-MORENO (S.D. Fla.), another similar litigation that involves the same Defective HVAC System, has revealed that Toyota was also well aware of the Defective HVAC System in the Class Vehicles from one of its distributors, Southeast Toyota Distributors, LLC ("SET").

70.     Although Toyota had independent access to a database that housed customer complaints, including those pertaining to the Defective HVAC System in the Class Vehicles, according to publicly available documents from such litigation, SET communicated directly with Toyota's dealerships about consumer complaints and would flag to Toyota those that it felt were particularly in need of attention.  SET recognized that HVAC odor was a significant and persistent problem, and acknowledged that it "continues to receive customer complaints over this concern, an issue which has resulted in 43 buybacks over the last 10 years."

71.     SET also participated in odor investigations alongside Toyota, attending some HVAC conferences, and some SET employees shared a physical building with a Toyota Product Quality Field Office, so that, according to one Toyota employee, Toyota could work with SET on HVAC odor issues.

72.     In 2010, SET and Toyota together participated in HVAC odor testing, confirming that odor was emanating from the HVAC systems in Toyota vehicles. In 2011, SET and Toyota together implemented HVAC odor inspection protocols designed to find the source of the odor rather than simply masking it.

73.     In September of 2012, Toyota discussed the complaints that it had received from SET.  As described by Christopher Hitt, Product Engineer with TMS, "AC has been one of the top issues for SET for the last few years. SET stopped attempting to repair vehicles with AC odor, because of the severity of the Lemon Law in the state of Florida. SET started to tell customers the condition was normal."

74.     The high number of complaints in the Camry that Toyota identified in 2012 led Toyota to internally describe HVAC odor as a "chronic issue" by 2012.

1  Indeed, according to Toyota's DQPS (Design Quality Planning system) PP100
2  (Problems Per 100) for 2012, in the category of AC Odor, the Camry was the worst
3  **non-hybrid** vehicle in the Toyota car categories at 6.22%, meaning that 6.22% of
4  Camry owners reported an issue with HVAC odor in their vehicles.

5      75.    According to that DPQS, however, the worst vehicle **across all of**
6  **Toyota's vehicle lines** was the Prius, with a PP100 of 11.88%.  In other words, **11.88%**
7  **of Prius owners reported an issue with HVAC odor in their vehicles—almost**
8  **twice the number of Camry owners that reported the same issue.**

9      76.    Even Toyota's own employees complained of the Defective HVAC
10 System and the odor it produces in their own vehicles.  For example, Dwayne Kinsey,
11 a Field Product Engineer for TMS, started complaining of HVAC Odor in his 2012
12 Camry, and after a year of Toyota being unable to rid his vehicle of the odor, a Toyota
13 service technician recommended replacing the evaporator core in his vehicle's HVAC
14 system.  In fact, while Mr. Kinsey was dealing with the HVAC System Defect in his
15 vehicle, he was proposing an agenda for speaking with various Toyota dealers regarding
16 the HVAC odor, including meeting with SET about the impact of the Defective HVAC
17 System on dealers' business.

18      77.    In addition to passing along to the customer the cost for abating the odor
19 rather than covering it under warranty, SET and Toyota both took the position that
20 customers should be told the HVAC odor was "normal," agreeing that because "[t]here
21 isn't any effective repair method" the "[d]ealership just has to explain to customers that
22 'It is normal' and can't perform a repair of customer's vehicles about HVAC odor."

23      78.    SET apparently represented Toyota in Lemon Law, buyback, and other
24 arbitration proceedings, and was consistently focused on how contextualizing the issue
25 at the consumer level would impact SET and Toyota's position going into those
26 proceedings. In these proceedings, SET took the position at Toyota's direction that the
27 HVAC odor was not a repairable defect, making clear that "Toyota is trying not to set
28 a precedence [sic]," but that regardless of the source of the odor, "it doesn't negate the

1  fact we are aware of it, and until we find a fix, we're going to maintain the position that

2  it's 'normal'"

3      79.    Technicians who deviated from the position that the odor was normal

4  were met with sharp rebuke.  In a 2013 communication, a Toyota case manager stated

5  that they advise customers to take several steps to remediate any HVAC odor, but that

6  if the odor is not alleviated, "we encourage you to contact your local Toyota dealership

7  for a thorough evaluation of the condition."   A SET customer loyalty specialist

8  forwarded the message to SET Customer Retention Specialist Jennifer Geiger, letting

9  her know that she had explained "our problem with unnecessary repairs attempts" to

10  the Toyota employee, who said she understood and would share it with the rest of her

11  colleagues. In response, Ms. Geiger stated that the explanation was "not okay" and

12  described it as "damaging, burying to us!!."

13      80.    SET at times made suggestions or considered making suggestions to

14  Toyota regarding remediation of the odor. For example, in 2015, SET reached out to

15  Toyota "regarding Camry HVAC odor," prompting Toyota executives to request a

16  study into how to improve consumer issues with HVAC odor in its vehicles.  One of

17  the suggestions was to introduce charcoal filters as original equipment with the vehicles

18  and/or that their initial installation should be covered by warranty.

19      81.    Toyota already knew, however, that charcoal filters would reduce HVAC

20  odor, but in 2013 had refused to absorb the cost in connection with the upgraded

21  charcoal filter.  Toyota was concerned not only with absorbing the original cost

22  outright, but also the cost to replace the filter every 10,000 miles as necessary, and even

23  the potential of shifting the cost to consumers, as this would impact third-party cost of

24  ownership ratings and thus possibly decrease class vehicle sales.

25      82.    Gregory Lang, Toyota's Product Planning Manager at the time, also

26  expressed his belief that HVAC odor is "[n]ot a common warranty claim as dealers

27  typically try to avoid this as it is only a temporary fix and could then start the road

28  towards a buy-back." Mr. Lang added: "While it is tempting to only specify the charcoal

filter as a field fix for customers who complain, this causes problems to ask them to pay more for something they will believe that we should have included originally. It is more logical to equip it OE [original equipment] and then explain to customer that smell has started as it is time to replace the filter."

83.     Several Toyota employees also expressed concern about the unfair practices employed to conceal the HVAC System Defect from consumers and to pass along increased costs associated with the HVAC System Defect to consumers. For example, on September 9, 2015, Shayne Carter, a Toyota pricing manager, emailed Ethan Leighton, the National Product Planning Manager for Toyota, stating he agreed with employees from SET expressing those concerns and asked: "[I]f this is a known issue with a TSB for how to repair, why are we asking to charge customers[;] it does seem challenging to explain why to get what a customer should expect as a standard condition for the air conditioner (no odor) we charge more?"

**E.     Marketing and Concealment**

84.     The above sources clearly evidence that Toyota has known about the Defective HVAC System since at least the late 1990s, and, without question, that the Class Vehicles contained the Defective System well before the date that Plaintiff and Class members made their Class Vehicle purchase.

85.     Notwithstanding Toyota's exclusive and superior knowledge of the Defective HVAC System, Toyota failed to disclose the HVAC System Defect to consumers, including Plaintiff and Class members, at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the same defect through the 2020 model year.

86.     Indeed, at all relevant times, in advertisements, promotional materials, and other representations, Toyota continuously maintained that the Class Vehicles were safe and reliable, while uniformly omitting any reference to the HVAC System Defect. Plaintiff, directly or indirectly, viewed or heard such advertisements, promotional materials, or representations prior to purchasing or leasing his Class Vehicle. The

1   misleading statements and omissions about the Class Vehicles' safety and reliability in

2   Toyota's advertisements, promotional materials, and representations were material to

3   Plaintiff's and Class members' decision to purchase or lease the Class Vehicles.

4   87.   Toyota could have easily disclosed the Defective HVAC System to

5   Plaintiff and Class members given that it engaged in national advertising campaigns for

6   the Class Vehicles on the Internet, in print, on the radio, and on television, and

7   distributed Class Vehicle brochures to dealers for provision to potential customers.

8   Plaintiff and Class members also would have been aware of the deception had Toyota

9   disclosed fully disclosed the nature and extent of the HVAC Defect to its dealerships

10  and directed the dealerships to advise Plaintiff and Class members of same given that,

11  for the most part, each Plaintiff interacted with, and received information from, sales

12  representatives at authorized Toyota dealerships prior to purchasing their Class

13  Vehicles.   Indeed, Toyota routinely communicates with consumers through its

14  authorized dealerships via product brochures, special service messages, TSBs, and

15  warranty programs.

16  88.   In sum, Toyota had ample opportunity to disclose its omissions to

17  Plaintiff and Class members through these channels and more, but failed to do so.

18  **F.   The Damage Caused by the Defective HVAC System**

19  89.   Plaintiff and Class members purchased or leased the Class Vehicles based

20  on their reasonable but mistaken belief that their vehicles were of high quality, durable,

21  and free of defects.  However, the Class Vehicles delivered by Toyota were not those

22  for which Plaintiff and Class members bargained.  Rather, the Class Vehicles suffered

23  from a common defect—the Defective HVAC System.  Had Plaintiff and Class

24  members known of the Defect, they would have either: (a) paid substantially less for

25  the Class Vehicles; (b) required an immediate remedy that restored the Class Vehicles

26  to the conditions bargained for; or (c) not purchased or leased the Class Vehicles.

27  90.   As a result of the disparity between the quality of the Class Vehicles

28  negotiated for and the Vehicles actually received, Plaintiff and Class members suffered

economic harm.  This economic harm can be quantified as: (a) the economic value of an effective remedy that restores the Class Vehicles to their expected conditions (or the economic harm from the lack of that remedy); (b) the discount that Plaintiff and Class members would have required to accept the Vehicles in their actual condition; and/or (c) the diminished value of the Vehicles.

91.     Plaintiff and Class members paid premiums to purchase and lease the Class Vehicles as a result of the brand, quality, durability, and value representations made by Toyota.  A vehicle purchased or leased with the reasonable expectation that it is of high quality and durable as advertised is worth more than a vehicle known to be subject to the problems or risks associated with the Defective HVAC System.  Plaintiff and Class members were harmed from the day they drove their Class Vehicles off the lot because they did not get what they paid for—a high quality and durable vehicle that would retain its value under normal conditions.

92.     As a direct result of Toyota's misrepresentations and omissions, Plaintiff and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.  Plaintiff and Class members paid a premium for the Class Vehicles, which Toyota advertised as being durable and of high-quality, and received Vehicles that contained a known but concealed defect.  Toyota was unjustly enriched because it obtained and retained monies paid by Plaintiff and Class members who paid a price for the Class Vehicles that was higher than the value of the vehicles they received in return.

93.     As a result of Toyota's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose the Defect and the problems associated therewith, owners and lessees of the Class Vehicles have suffered losses in money and/or property.

**G.     Fraudulent Concealment Allegations**

94.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Toyota responsible for disseminating false and misleading marketing materials and information

regarding the Class Vehicles.  Toyota necessarily is in possession of, or has access to, all of this information.

95.    Plaintiff's claims arise out of Toyota's fraudulent concealment of the Defect and Toyota's representations about the quality, durability, and value of the Class Vehicles.

96.    To the extent that Plaintiff's claims arise from Toyota's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.  Plaintiff alleges that at all relevant times, including specifically at the time he purchased or leased his Class Vehicles, Toyota knew, or was reckless in not knowing, of the Defective HVAC System; Toyota was under a duty to disclose the Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it, and Toyota never disclosed the Defect to Plaintiff or the public at any time or place or in any manner.

97.    Plaintiff makes the following specific fraud allegations with as much specificity as possible, although he does not have access to information necessarily available only to Toyota:

a.    *Who*:  Toyota actively concealed the Defective HVAC System from Plaintiff and Class members while simultaneously touting the quality and durability of the Class Vehicles.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Toyota responsible for such decisions.

b.    *What*:  Toyota knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Defective HVAC System.  Toyota concealed the Defect and made contrary representations about the quality and durability, and other attributes of the Class Vehicles.

c.    *When*:  Toyota concealed material information regarding the Defect at all times and made representations about the quality and durability of the Class Vehicles, starting no later than 2004, or at the subsequent introduction of certain

models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day.  Toyota has not disclosed the truth about the Defective HVAC System in the Class Vehicles to anyone outside of Toyota. Toyota has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles.  And when consumers brought their Class Vehicles to Toyota complaining of the foul odor emitting from the vehicles, Toyota denied any knowledge of, or responsibility for, the Defect, and in many instances, required consumers to pay out-of-pocket expenses to purportedly remedy the situation, when Toyota knew there was no solution for the Defect.

d.     *Where*:  Toyota concealed material information regarding the true nature of the Defective HVAC System in every communication it had with Plaintiff and Class members and made contrary representations about the quality and durability of the Class Vehicles.  Plaintiff is aware of no document, communication, or other place or thing in which Toyota disclosed the truth about the Defect in the Class Vehicles to anyone outside of Toyota.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Toyota's website.

e.     *How*:  Toyota concealed the Defective HVAC System from Plaintiff and Class members and made representations about the quality and durability of the Class Vehicles.  Toyota actively concealed the truth about the existence and nature of the Defect from Plaintiff and Class members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Toyota promised in its marketing materials that the Class Vehicles have qualities that they do not have, and moreover, made representations in its warranties that it knew were false, misleading, and deceptive.

f.     *Why*:  Toyota actively concealed material information about the Defective HVAC System in Class Vehicles for the purpose of inducing Plaintiff and Class members to purchase or lease the Vehicles, rather than purchasing or leasing

32

competitors' vehicles and made representations about the quality and durability of the Vehicles.  Had Toyota disclosed the truth, for example, in its advertisements or other materials or communications, Plaintiff (and reasonable consumers) would have been aware of it, and would not have bought the Class Vehicles or would have paid less for them.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

98.    Any applicable statute of limitations has been tolled by Toyota's knowing and active concealment of the Defective HVAC System and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiff and Class members were deceived regarding the Defective HVAC System and could not reasonably discover the defect or Toyota's deception with respect to the Defect.

99.    Plaintiff and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Toyota was concealing a defect and/or that the Class Vehicles contained a Defective HVAC System and corresponding safety hazard.  As alleged herein, the existence of the Defective HVAC System and corresponding safety hazard were material to Plaintiff and Class members at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiff and Class members could not have discovered through the exercise of reasonable diligence that Toyota was concealing the defect in the Defective HVAC System.

100.   At all times, Toyota is and was under a continuous duty to disclose to Plaintiff and Class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defective HVAC System and associated safety hazard.

101.   Toyota knowingly, actively, and affirmatively concealed the facts alleged herein including the Defective HVAC System and safety hazard. Plaintiff and Class members reasonably relied on Toyota's knowing, active, and affirmative concealment.

102.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Toyota's fraudulent concealment and Toyota is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ALLEGATIONS

103.   Plaintiff brings this action pursuant to Rule 23(a) and (b)(2)-(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated as members of the following Nationwide Class (under the laws of the State of California) and State Class defined as:

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) that purchased or leased a Class Vehicle.  Class Vehicles consist of Toyota Priuses, model years 2006-2020.

**California Class:**

All persons or entities that purchased or leased a Class Vehicle within California or that purchased or leased a Class Vehicle and reside in California.

104.   Excluded from the Class are Toyota; its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Toyota; Toyota's dealers; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

105.   Certification of Plaintiff's claims for Class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

106.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

107.   **Numerosity.**  Rule 23(a)(1) of the Federal Rules of Civil Procedure:  The Class members are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are at least thousands of Class members, the precise number of Class members is unknown to Plaintiff but may be ascertained from Toyota's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

108.   **Commonality and Predominance.**   Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.   whether Toyota engaged in the conduct alleged herein;

b.   whether Toyota designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.   whether Toyota designed, manufactured, marketed, and distributed Class Vehicles with a Defective HVAC System;

d.   whether Plaintiff and Class members overpaid for their Class Vehicles and/or did not receive the benefit of the bargain;

e.   whether Plaintiff and Class members are entitled to damages and other monetary relief and, if so, in what amount;

f.   whether Toyota's alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

1           g.   whether Toyota has been unjustly enriched under applicable state

2   laws;

3           h.   whether Toyota has violated its express warranties to Plaintiff and

4   Class members;

5           i.   whether Toyota actively concealed the Defect in order to maximize

6   profits to the detriment of Plaintiff and Class members; and

7           j.   such other common factual and legal issues as are apparent from

8   the allegations and causes of action asserted in this Complaint.

9       109.   **Typicality.**   Rule 23(a)(3) of the Federal Rules of Civil Procedure:

10   Plaintiff's claims are typical of the other Class members' claims because, among other

11   things, all Class members were comparably injured through Toyota's wrongful conduct

12   as described above.  All claims seek recovery on the same legal theories and are based

13   upon Toyota's common course of conduct.

14       110.   **Adequacy.**   Rule 23(a)(4) of the Federal Rules of Civil Procedure:

15   Plaintiff is an adequate Class representative because his interests do not conflict with

16   the interests of the other Class members he seeks to represent; Plaintiff has retained

17   counsel competent and experienced in complex class action litigation; and Plaintiff

18   intends to prosecute this action vigorously.  The Class' interests will be fairly and

19   adequately protected by Plaintiff and his counsel.

20       111.   **Declaratory Relief.**   Rule 23(b)(2) of the Federal Rules of Civil

21   Procedure:  Toyota has acted or refused to act on grounds generally applicable to

22   Plaintiff and Class members, thereby making declaratory relief appropriate with respect

23   to each Class as a whole.

24       112.   **Superiority.**  Rule 23(b)(3) of the Federal Rules of Civil Procedure:  A

25   class action is superior to any other available means for the fair and efficient

26   adjudication of this controversy, and no unusual difficulties are likely to be encountered

27   in the management of this class action.  The damages or other financial detriment

28   suffered by Plaintiff and Class members are relatively small compared to the burden

and expense that would be required to individually litigate their claims against Toyota, so it would be impracticable for Class members to individually seek redress for Toyota's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLAIMS

**A.   Claims Brought on Behalf of the Nationwide Class**

### NATIONWIDE COUNT I
### FRAUDULENT CONCEALMENT

113.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

114.   Plaintiff bring this claim on behalf of himself and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states. In the alternative, Plaintiff brings this claim on behalf of the California Class.

115.   Toyota fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles, the existence of the Defective HVAC System, and Toyota's ability to render an adequate repair for the Defect.

116.   Despite advertising the durability and quality of the Class Vehicles, Toyota knew when it manufactured, marketed, and sold or leased the Class Vehicles that HVAC System thereon suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and causes the Class Vehicles' HVAC System to emit foul, noxious, and/or toxic odors that contained mold and other contaminants.

117.   Toyota failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles and Toyota knowingly and intentionally engaged in this concealment in order to boost sales and revenue,

1    maintain its competitive edge in the automobile market, and obtain windfall profit.

2    Through its active concealment and/or suppression of these material facts, Toyota

3    sought to increase consumer confidence in the Class Vehicles, and to falsely assure

4    purchasers and lessors of the same that the Class Vehicles were of sound quality and

5    that Toyota was a reputable manufacturer that stands behind the automobiles it

6    manufactures.  Toyota engaged in this behavior to protect its profits, avoid warranty

7    replacements, avoid recalls that would impair the brand's image, cost it money, and

8    undermine its competitiveness in the automobile industry.

9          118.   Plaintiff and Class members were unaware, and could not reasonably

10    discover on their own, that Toyota's representations were false and misleading, or that

11    it had omitted material facts relating to the Class Vehicles.

12          119.   Toyota had a duty to disclose, rather than conceal and suppress, the full

13    scope and extent of the Defect because:

14             a.   Toyota had exclusive or far superior knowledge of the Defect and

15    concealment thereof;

16             b.   the facts regarding the Defect and concealment thereof were

17    known and/or accessible only to Toyota;

18             c.   Toyota knew that Plaintiff and Class members did not know about,

19    or could not reasonably discover, the Defect and concealment thereof; and

20             d.   Toyota made representations and assurances about the durability

21    and qualities of the Class Vehicles that were misleading, deceptive, and incomplete

22    without the disclosure of the fact that the aluminum used on the Class Vehicles suffered

23    from a systemic design and/or manufacturing defect.

24          120.   These omitted and concealed facts were material because a reasonable

25    consumer would rely on them in deciding to purchase or lease the Class Vehicles, and

26    because they substantially reduced the value of the Class Vehicles purchased or leased

27    by Plaintiff and Class members.  Whether the Class Vehicles were defective, of sound

28    quality, and durable, and whether Toyota stood behind such Class Vehicles, would have

been an important factor in Plaintiff's and the Class members' decisions to purchase or lease the Class Vehicles. Plaintiff and Class members trusted Toyota not to sell them vehicles that were defective and significantly overpriced.

121. Toyota intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Toyota and reasonably expected by consumers.

122. Plaintiff and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts. Plaintiff and Class members did not receive the benefit of their bargain due to Toyota's fraudulent concealment. Plaintiff's and Class members' actions in purchasing the Class Vehicles were justified. Toyota was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiff, or Class members.

123. Plaintiff and Class members relied to their detriment upon Toyota's reputation, fraudulent misrepresentations, and material omissions regarding the durability and quality of the Class Vehicles, the existence of the Defect, and Toyota's ability to render an adequate repair for the Defect.

124. As a direct and proximate result of Toyota's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiff and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Toyota's concealment of, and failure to disclose, the Defect. Many Class members have also paid substantial money to (unsuccessfully) repair the Defect.

125. Accordingly, Toyota is liable to the Nationwide Class and/or State Classes for their damages in an amount to be proven at trial.

126. Toyota has still not made full and adequate disclosure and continues to defraud Plaintiff and Class members. Toyota also continues to conceal material information regarding the Defect.

127.   Toyota's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class members' rights.   Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### NATIONWIDE COUNT II
### UNJUST ENRICHMENT

128.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

129.   Plaintiff brings this cause of action on behalf of himself and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states.   In the alternative, Plaintiff brings this claim on behalf of the California Class.

130.   Plaintiff brings this claim as an alternative to the contractual warranty claims asserted below and in the event that Plaintiff prevails on his claims that any contract with Toyota (including any express warranty) was fraudulently induced and/or Plaintiff prevails in proving that the warranties cannot be enforced by Toyota due to Toyota having provided the warranties only after entering into a contract with a purchaser or lessor, or due to Toyota's intentional and deceptive efforts to conceal the Defect and avoid its warranty obligations.

131.   Toyota has received millions in revenue from the sale of the Class Vehicles since 2004 and continues to receive millions in revenue from the sale of the Class Vehicles to this day.

132.   This revenue was a benefit conferred upon Toyota by Plaintiff and Class members, individuals living across the United States.

133.   Toyota manufactured, marketed, and sold defective Class Vehicles to Plaintiff and Class members, while actively concealing the Class Vehicles' known defects and touting the durability and quality of the Class Vehicles.

134.    Toyota benefitted from selling defective vehicles for more money than they were worth, at a profit, and Plaintiff has overpaid for the vehicles and, in some instances, been forced to pay to (unsuccessfully) repair the Defect.

135.    Plaintiff and Class members elected to purchase or lease the Class Vehicles based on Toyota's misrepresentations, deception, and omissions.  Toyota knew and understood that it would (and did) receive a financial benefit, and voluntarily accepted the same, from Plaintiff and Class members when they elected to purchase or lease the Class Vehicles.

136.    The Class Vehicles' defect, and Toyota's concealment of the same, enriched Toyota beyond its legal rights by securing through deceit and falsehood millions of dollars in revenues since 2006.

137.    Therefore, because Toyota will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiff and each Class member are entitled to recover the amount by which Toyota was unjustly enriched at his or her expense.

138.    Accordingly, Plaintiff, on behalf of himself and each Class member, seeks damages against Toyota in the amounts by which it has been unjustly enriched at Plaintiff's and each Class member's expense, and such other relief as this Court deems just and proper.

**NATIONWIDE COUNT III**

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

**(15 U.S.C. §2301, *et seq.*)**

139.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

140.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq. ("MMWA") by virtue of 28 U.S.C. §1332(a)-(d).

141.   The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. §2301(1).

142.   Plaintiff is a "consumer" within the meaning of the MMWA, 15 U.S.C. §2301(3).  He is a consumer because he is a person entitled under applicable state law to enforce against the warrantor the obligations of its written warranties.

143.   Toyota is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. §2301(4)-(5).

144.   15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

145.   In connection with the purchase or lease of all Class Vehicles, and as detailed above, Toyota provided Plaintiff and Class members with a warranty covering defects in materials and workmanship of the Class Vehicles for three years or 36,000 miles, which is covered under 15 U.S.C. §2301(6).

146.   Toyota breached its warranties, as described in more detail above, and is therefore liable to Plaintiff and Class members pursuant to 15 U.S.C. §2310(d)(1).  Without limitation, the Class Vehicles share a common design and/or manufacturing defect in that the Class Vehicles are defectively designed and built with an HVAC System that fails to properly remove all humidity and water and emits foul, noxious, and/or toxic odors into the vehicles' passenger compartments when the Defective HVAC System is in use.  Toyota's refusal to fully cover repairs and acknowledge the Defect in order to inform current and future purchasers and lessors of Class Vehicles is woefully insufficient.

147.   In its capacity as a warrantor, Toyota had knowledge of the inherent defect in the Class Vehicles.  Any effort by Toyota to limit any aspect of its warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

148.   Any limitations Toyota might seek to impose on its warranties are procedurally unconscionable.  There was unequal bargaining power between Toyota and Plaintiff and Class members, as, at the time of purchase and lease, Plaintiff and Class members had no other options for purchasing warranty coverage other than directly from Toyota.

149.   Any limitations Toyota might seek to impose on its warranties are substantively unconscionable.  Toyota knew that the Class Vehicles were defective and would continue to pose quality concerns after the warranties purportedly expired. Toyota failed to disclose these defects to Plaintiff and Class members.  Thus, Toyota's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

150.   Plaintiff and each of the other Class members have had sufficient direct dealings with either Toyota or its agents (Dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiff and each of the other Class members, on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Toyota and its Dealers, and specifically, of Toyota's warranties.  The Dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for, and intended to, benefit consumers.

151.   Pursuant to 15 U.S.C. §2310(e), Plaintiff is entitled to bring this class action and is not required to give Toyota notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Fed. R. Civ. P. 23.

152.   Plaintiff and Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Toyota is refusing to acknowledge any revocation of acceptance and

1  return immediately any payments made, Plaintiff and Class members have not

2  reaccepted their Class Vehicles by retaining them.

3      153.   The amount in controversy of Plaintiff's individual claims meets or

4  exceeds the sum of $25, and the amount in controversy of this action exceeds the sum

5  of $50,000, exclusive of interest and costs, computed on the basis of all claims to be

6  determined in this lawsuit.   Plaintiff, individually and on behalf of the other Class

7  members, seeks all damages permitted by law, including diminution in value of their

8  vehicles, in an amount to be proven at trial.   In addition, pursuant to 15 U.S.C.

9  §2310(d)(2), Plaintiff and Class members are entitled to recover a sum equal to the

10  aggregate amount of costs and expenses (including attorneys' fees based on actual time

11  expended) determined by the Court to have reasonably been incurred by Plaintiff and

12  Class members in connection with the commencement and prosecution of this action.

13      154.   Plaintiff seeks the establishment of a Toyota-funded program for Plaintiff

14  and Class members to recover out-of-pocket costs incurred in attempting to rectify the

15  Defect in their Class Vehicles.

16  **B.**   **Claims Brought on Behalf of the California Class**

17  **CALIFORNIA COUNT I**

18  **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**

19  **(CAL. BUS. & PROF. CODE §17200, ET SEQ.)**

20      155.   Plaintiff realleges and incorporates by reference all preceding allegations

21  as though fully set forth herein.

22      156.   Plaintiff brings this claim on behalf of himself and the California Class.

23      157.   California's Unfair Competition Law ("UCL"), Business and Professions

24  Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

25      158.   As alleged herein, Toyota has violated the UCL by engaging in unlawful,

26  unfair, and fraudulent business acts or practices.

27      159.   In violation of the UCL, Toyota employed unfair, unlawful, and deceptive

28  acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression,

or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Toyota knowingly concealed, suppressed and/or omitted material facts regarding the Defective HVAC System and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and Class members.

160.   Toyota actively suppressed the fact that the Defective HVAC System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design and/or manufacturing defects. Further, Defendants employed unfair, unlawful, and fraudulent business practices to deny repair or replacement of Defective HVAC System within a reasonable time in violation of the UCL.

161.   Toyota breached its warranties, the CLRA, the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act as alleged herein in violation of the UCL.

162.   Toyota's unfair, unlawful, and fraudulent business practices were likely to deceive a reasonable consumer.  Plaintiff and Class members had no reasonable way to know that Class Vehicles contained Defective HVAC Systems which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.  Toyota possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective HVAC System and associated safety risks, and any reasonable consumer would have relied on Toyota's misrepresentations and omissions as the Plaintiff and Class members did.

163.   Toyota intentionally and knowingly misrepresented and omitted facts regarding the Defective HVAC System and associated safety hazard with the intent to mislead Plaintiff and Class members.  Toyota knew, or should have known, that the Defective HVAC System is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

164.   Toyota owed a duty to disclose the Defective HVAC System and its corresponding safety hazard to Plaintiff and Class members because Toyota possessed superior and exclusive knowledge regarding the Defect and the hazard associated with the Defective HVAC System. Rather than disclose the Defect, Toyota engaged in unfair, unlawful, and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective HVAC Systems.

165.   Toyota's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System were intended to mislead consumers and misled Plaintiff and Class members.

166.   At all relevant times, Toyota's unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective HVAC System and its corresponding safety hazard were material to Plaintiff and Class members.  When Plaintiff and Class members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not emit foul and noxious odors and/or pose an unavoidable safety hazard.  Had Toyota disclosed that the Defective HVAC System was defective and would emit foul and noxious odors and/or pose an unavoidable safety hazard, Plaintiff and Class members would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

167.   Toyota had a continuous duty to Plaintiff and Class members to refrain from unfair, unlawful, and fraudulent practices under the UCL and to disclose the defect and associated safety hazard.  Toyota's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective HVAC System and corresponding safety hazard are substantially injurious to consumers. As a result of Toyota's knowing, intentional concealment and/or omission of the Defective HVAC System and associated safety hazard in violation of the UCL, Plaintiff and Class members have suffered harm and/or continue to suffer harm by the threat of being exposed to foul and noxious odors and/or an unavoidable safety hazard,

and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective HVAC System, and the diminished value of their vehicles as a result of Toyota's unfair, unlawful and fraudulent acts and practices in the course of its business.

168.   Toyota has knowingly and willfully engaged in the unfair, unlawful, and fraudulent business practices alleged herein.  Further, Toyota unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Defect and corresponding safety hazard.

169.   Toyota's unfair, unlawful, and fraudulent acts and practices have harmed and continue to harm Plaintiff and Class members, have negatively affected the public interest, and present a continuing safety hazard to Plaintiff and Class members.

170.   Plaintiff and Class members seek an order enjoining Toyota's unfair, unlawful, and fraudulent practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

**CALIFORNIA COUNT II**

**VIOLATIONS OF THE CALIFORNIA CONSUMERS**

**LEGAL REMEDIES ACT**

**(CAL. CIV. CODE § 1750, ET SEQ.)**

171.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

172.   Plaintiff brings this claim on behalf of himself and the California Class.

173.   The Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA") "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

174.    Plaintiff and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

175.    Plaintiff and Class members purchased their Class Vehicles primarily for personal, family, or household purposes.

176.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

177.    Toyota violated and continues to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code § 1170.

178.    Toyota further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles incorporate a Defective HVAC System that is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

179.    Toyota also violated the CLRA by actively concealing the material fact that the Class Vehicles incorporate a Defective HVAC System that is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard for the purpose of selling additional Class Vehicles and/or transferring the cost of repair or replacement of the Defective HVAC System to Plaintiff and Class members.

180.    The fact that the Defective HVAC System installed in the Class Vehicles is defective and exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard is material because Plaintiff and Class members had a reasonable expectation that the vehicles would not suffer from a Defective HVAC system that would expose them and other vehicle occupants to foul and noxious odors and/or an associated safety hazard. No reasonable consumer expects a vehicle to

48

incorporate a Defective HVAC System that exposes drivers and other vehicle occupants to foul and noxious odors and/or an associated safety hazard from mold growth.

181.    Toyota has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Toyota unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Defect and corresponding safety hazard.

182.    Toyota's unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety hazard to Plaintiff and Class members.

183.    As a direct and proximate result of Toyota's violations of the CLRA, Plaintiff and Class members have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective HVAC System; (2) the difference in value between the Class Vehicles promised and warranted and the Class Vehicles containing the Defective HVAC System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective HVAC System.

184.    With this filing, and on this Count, Plaintiff and Class members seek an order enjoining Toyota's unfair and deceptive practice.

185.    Toyota's violations of the CLRA were willful and oppressive.

186.    Toyota had notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), as alleged above. In addition, a letter was transmitted to Toyota on January 3, 2017, by the plaintiff in the *Stockinger* action, and, to date, Toyota has failed to remedy its violations of the CLRA. Therefore, Plaintiff and Class members are entitled to seek monetary relief for Toyota's violation of the CLRA. Plaintiff and Class members seek actual damages, punitive damages, statutory damages, restitution, attorneys' fees and any other relief proper under the CLRA. *See* Cal. Civ. Code § 1780.

## CALIFORNIA COUNT III
## BREACH OF IMPLIED WARRANTIES
## (CAL. COM. CODE §§2314 AND 10212)

187.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

188.   Plaintiff brings this claim on behalf of himself and the California Class.

189.   Toyota is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§2104(1) and 10103(c), and "seller" of the Class Vehicles under §2103(1)(d).

190.   With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under CAL. COM. CODE §10103(a)(16).

191.   The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

192.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CAL. COM. CODE §§2314 and 10212.

193.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of the HVAC Defect, as detailed above.   In addition, because any warranty repairs or replacements offered by Toyota cannot cure the Defect in the Class Vehicles, they fail to cure Toyota's breach of implied warranties.

194.   As a direct and proximate result of Toyota's breach of its implied warranties, Plaintiff and the California Class members have been damaged in an amount to be determined at trial.

195.   Toyota was provided notice of the issues raised in this Count and this Complaint, as detailed above.

# CALIFORNIA COUNT IV
## BREACH OF EXPRESS WARRANTY
### (CAL. COM. CODE §§2313 AND 10210)

196.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

197.   Plaintiff brings this claim on behalf of himself and the California Class.

198.   Toyota is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§2104(1) and 10103(c), and a "seller" of the Class Vehicles under §2103(1)(d).

199.   With respect to leases, Toyota is and was at all relevant times a "lessor" of motor vehicles under CAL. COM. CODE §10103(a)(16).

200.   The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

201.   In connection with the purchase or lease of all Class Vehicles, Toyota provided Plaintiff and the California Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles, as detailed above.

202.   Toyota's warranties formed a basis of the bargain that was reached when Plaintiff and the California Class members purchased or leased their Class Vehicles.

203.   Toyota breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the California Class members with Class Vehicles containing defects in the materials and workmanship that were never disclosed to Plaintiff and the California Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Toyota.

204.   Plaintiff and the California Class members have given Toyota a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the

51

1   repairs or replacements offered by Toyota can neither cure the defect in the Class
2   Vehicles nor resolve the incidental and consequential damages flowing therefrom.

3   205.   Thus, Toyota's warranty fails of its essential purpose and the recovery of
4   Plaintiff and the California Class members is not limited to its remedies.

5   206.   Accordingly, Plaintiff and the California Class members assert as
6   additional and/or alternative remedies, the revocation of acceptance of the goods and
7   the return to Plaintiff and the California Class members of the purchase or lease price
8   of all Class Vehicles currently owned and leased, and for such other incidental and
9   consequential damages as allowed.

10   207.   As a direct and proximate result of Toyota's breach of its express warranty,
11   Plaintiff and the California Class members have been damaged in an amount to be
12   determined at trial.

13   208.   Toyota was provided notice of the issues raised in this Count and this
14   Complaint, as detailed above.

15                          **CALIFORNIA COUNT V**
16   **VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
17                   **FOR BREACH OF EXPRESS WARRANTIES**
18                 **(CAL. CIV. CODE §§1791.2 AND 1793.2(D))**

19   209.   Plaintiff realleges and incorporates by reference all preceding allegations
20   as though fully set forth herein.

21   210.   Plaintiff brings this claim on behalf of himself and the California Class.

22   211.   Plaintiff and the California Class members who purchased or leased the
23   Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code §1791(b).

24   212.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ.
25   Code §1791(a).

26   213.   Toyota is a "manufacturer" of the Class Vehicles within the meaning of
27   Cal. Civ. Code §1791(j).

28

214. Plaintiff and the California Class members bought or leased Class Vehicles manufactured by Toyota.

215. Toyota made express warranties to Plaintiff and the California Class members within the meaning of Cal. Civ. Code §§1791.2 and 1793.2, as described above.

216. As set forth above in detail, the Class Vehicles are inherently defective in that they contain a Defective HVAC System that that emits foul, noxious, and/or toxic odors into the vehicle's passenger compartment or emits mold and other contaminants into the vehicles, posing a health and safety hazard to vehicle occupants.

217. As a result of Toyota's breach of its express warranties, Plaintiff and the California Class members received goods whose defective condition substantially impairs their value to Plaintiff and the California Class members. Plaintiff and the California Class members have been damaged as a result of, *inter alia*, the diminished value of their Class Vehicles, the foul, noxious, and/or toxic odors and contaminants that are emitted into the Vehicles, and the non-use of their Class Vehicles.

218. Pursuant to Cal. Civ. Code §§1793.2 and 1794, Plaintiff and the California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase or lease price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

219. Pursuant to Cal. Civ. Code §1794, Plaintiff and the California Class are entitled to costs and attorneys' fees.

## CALIFORNIA COUNT VI
## VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF IMPLIED WARRANTIES
## (CAL. CIV. CODE §§1791.1 AND 1792)

220. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

221. Plaintiff brings this claim on behalf of himself and the California Class.

222.    Plaintiff and the California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code §1791(b).

223.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code §1791(a).

224.    Toyota is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code §1791(j).

225.    Plaintiff and the California Class members bought or leased Class Vehicles manufactured by Toyota.

226.    Toyota impliedly warranted to Plaintiff and California Class members that the Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

227.    CALIFORNIA CIV. CODE §1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

228.    The Class Vehicles would not pass without objection in the automotive trade, and are not fit for their ordinary purposes as a result of the inherent HVAC Defect, as detailed above.  In addition, the Class Vehicles are not adequately labeled because the labeling fails to disclose the Defect.  Further, because any warranty repairs or replacements offered by Toyota cannot cure the Defect in the Class Vehicles, they fail to cure Toyota's breach of implied warranties.

229.    Toyota breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the HVAC Defect.  Furthermore,

1  this defect has caused Plaintiff and California Class members to not receive the benefit
2  of their bargain and has caused the Class Vehicles to diminish in value.

3      230.   As a direct and proximate result of Toyota's breach of the implied
4  warranty of merchantability, Plaintiff and the California Class members received goods
5  whose defective condition substantially impairs their value.

6      231.   Plaintiff and the California Class members have been damaged as a result
7  of the diminished value of their Class Vehicles.

8      232.   Under CAL. CIV. CODE §§1791.1(d) and 1794, Plaintiff and the California
9  Class members are entitled to damages and other legal and equitable relief including, at
10 their election, the purchase or lease price of their Class Vehicles, or the overpayment
11 or diminution in value of their Class Vehicles.

12     233.   Under CAL. CIV. CODE §1794, Plaintiff and the California Class members
13 are entitled to costs and attorneys' fees.

## VIII.  PRAYER FOR RELIEF

15     WHEREFORE, Plaintiff, individually and on behalf of the members of the
16 Nationwide and California Class, respectfully requests that the Court certify the
17 proposed Nationwide and California Class, including designating the named Plaintiff as
18 representative of the Nationwide Class and the California Class and appointing the
19 undersigned as Class Counsel, and the designation of any appropriate issue classes,
20 under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment
21 in Plaintiff's favor and against Toyota including the following relief:

22     (i)     A declaration that any applicable statutes of limitations are tolled due to
23 Toyota's fraudulent concealment and that Toyota is estopped from relying on any
24 statutes of limitations in defense;

25     (ii)    Restitution, compensatory damages, and costs for economic loss and out-
26 of- pocket costs;

27     (iii)   Punitive and exemplary damages under applicable law;

28

(iv)    Reimbursement and compensation of the full purchase price for any repairs or replacements purchased by a Plaintiff or Class member to remedy the Defective HVAC System;

(v)     A determination that Toyota is financially responsible for all Class notices and the administration of Class relief;

(vi)    Any applicable statutory or civil penalties;

(vii)   An order requiring Toyota to pay both pre-judgment and post-judgment interest on any amounts awarded;

(viii)  An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts;

(ix)    Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

(x)     Any such other and further relief the Court deems just and equitable.

## X.    DEMAND FOR JURY TRIAL

Plaintiff and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), of all issues so triable.

Dated: September 22, 2021                    Respectfully submitted,

**EDELSBERG LAW, P.A.**

By: */s/ Scott Edelsberg*
Scott Edelsberg (State Bar No. 330990)
scott@edelsberglaw.com
1925 Century Park E #1700
Los Angeles, California 90067
Telephone: (305) 975-3320

**KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT**
Jason H. Alperstein (*pro hac vice to be filed*)
alperstein@kolawyers.com
Jeff Ostrow (*pro hac vice to be filed*)
ostrow@kolawyers.com

Kristen Lake Cardoso (*pro hac vice to be filed*)
cardoso@kolawyers.com
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

**GORDON & PARTNERS, P.A.**
Steven G. Calamusa (*pro hac vice to be filed*)
scalamusa@fortheinjured.com
Rachel A. Bentley (*pro hac vice to be filed*)
rbentley@fortheinjured.com
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050