**EDELSBERG LAW, P.A.**
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
1925 Century Park E #1700
Angeles, California 90067
Telephone: (310) 438-5355

**KOPELOWITZ OSTROW FERGUSON**
 **WEISELBERG GILBERT**
Jason H. Alperstein (*admitted pro hac vice*)
alperstein@kolawyers.com
Jeff Ostrow (*admitted pro hac vice*)
ostrow@kolawyers.com
Kristen Lake Cardoso, Bar No. 338762
cardoso@kolawyers.com
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

Attorneys for Plaintiff and the Proposed Classes

*(Additional Attorneys Listed on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BETTLES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TOYOTA MOTOR CORPORATION and TOYOTA MOTOR SALES, U.S.A., INC., <br><br> Defendants. | Case No. 2:21-cv-07560 <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** <br><br> Date: January 24, 2022 <br> Time: 1:30 p.m. <br> Judge: Hon. Otis D. Wright <br> Ctrm.: 5D, 5th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................1

II.   FACTUAL BACKGROUND ....................................................3

III.  LEGAL STANDARD .............................................................6

IV.   ARGUMENT ........................................................................6

   A.   PLAINTIFF STATE HIS CLAIMS FOR VIOLATIONS OF
        THE UCL AND CLRA .......................................................7

        1.   Plaintiff's Allegations Satisfy Rule 9(b) ..................................7

        2.   Toyota Had a Duty to Disclose the Defective
             HVAC System .....................................................9

   B.   PLAINTIFF STATE CLAIMS FOR BREACH OF
        WARRANTY……………………………………………… ......10

        1.   Toyota Breached its Express Warranties................................11

        2.   Toyota Breached its Implied Warranties…………………… 12

   C.   PLAINTIFF HAS SUFFICIENTLY STATED EQUITABLE
        CLAIMS IN THE ALTERNATIVE .................................................16

   D.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE
        STATUTE OF LIMITATIONS .......................................................17

V.    CONCLUSION....................................................................19

PLAINTIFF'S OPP. TO MOTION TO DISMISS
CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**

**Cases**                                                                       **Page(s)**

*Alin v. Am. Honda Motor Co.*,
    No. 08-cv-4825, 2010 U.S. Dist. LEXIS 32584 (D.N.J. Mar. 31, 2010)......... 11

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995) ........................................................................... 13

*Blissard v. FCA US LLC*,
    No. LA CV18-02765 JAK (JEMx), 2018 U.S. Dist. LEXIS 201725
    (C.D. Cal. Nov. 9, 2018).................................................................................... 14

*Cafasso v. Gen. Dynamics C4 Sys.*,
    637 F.3d 1047 (9th Cir. 2011)…………………………………………….. 7

*Cardenas v. Toyota Motor Corp.*,
    418 F. Supp. 3d 1090 (S.D. Fla. 2019)…………………………..... 2, 6, 17

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011)............................................................................. 9

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015)…………………………………………......12

*Eisen v. Porsche Cars N. Am., Inc.*,
    No. CV 11-9405 CAS (FEMx), 2012 U.S. Dist. LEXIS 116836
    (C.D. Cal. Feb. 22, 2012)…………………………………………….. . 7

*Ford v. Ford Motor Co.*,
    No. CV 13-8355 PSG (SSx), 2014 U.S. Dist. LEXIS 196447
    (C.D. Cal. Jan. 17, 2014)………………….. ..................................................... 8

*Gertz v. Toyota Motor Corp.*,
    No. CV 10-1089-PSG (VBKx), 2011 U.S. Dist. LEXIS 94183
    (C.D. Cal. Aug. 22, 2011)…………………………………………… 12

*Glassburg v. Ford Motor Co.*,
    No. 2:21-cv-01333-ODW (MAAx), 2021 U.S. Dist. LEXIS 211786
    (C.D Cal. Nov. 2, 2021).................................................................14, 15, 16

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
    494 F.3d 1203 (9th Cir. 2007)…………………………………………….. 18

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ............................................................................. 9

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................................... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
*& Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)…………………………….......…. 11, 16

*In re Zyprexa Prods. Liab. Litig.*,
    549 F. Supp. 2d 496 (E.D.N.Y. 2008) ............................................................. 18

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007)…………………………………………………  13

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012)…………………………………………  17

*Longest v. Green Tree Servicing LLC*,
    74 F. Supp. 3d 1289 (C.D. Cal. 2015)…………………………………………  17

*Ovando v. County of Los Angeles*,
    159 Cal. App. 4th 42, 71 Cal. Rptr. 3d 415 (2008)…………………………….  18

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
    No. CV 15-8629 FMO (Ex), 2016 U.S. Dist. LEXIS 195222
    (C.D. Cal. Sept. 27, 2016)……………………………………………… *passim*

*Sanchez v. Kia Motors Am., Inc.*,
    No. 820CV01604JLSKES, 2021 U.S. Dist. LEXIS 200707
    (C.D. Cal. Aug. 9. 2021)........................................................................... 13

*Sater v. Chrysler Group LLC*,
    No. EDCV 14-00700-VAP, 2015 U.S. Dist. LEXIS 21022
    (C.D. Cal. Feb. 20, 2015)........ ....................................................................... 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)………………………………………....… 16

*Stockinger v. Toyota Motor Sales USA, Inc.*,
    No. LACV 17-00035-VAP (KLSx), 2017 U.S. Dist. LEXIS 224071
    (C.D. Cal. Jul. 7, 2017)............................................................................. *passim*

*Stockinger v. Toyota Motor Sales U.S.A., Inc.*,

No. 217CV00035VAPKSX, 2019 U.S. Dist. LEXIS 63066
(C.D. Cal. Mar. 8, 2019)..................................................................... 2

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
No. 217CV00035VAPKSX, 2020 U.S. Dist. LEXIS 49943
(C.D. Cal. Mar. 3, 2020). .................................................................. 10

*Tietsworth v. Sears, Roebuck and Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................... 10

*Troup* v. Toyota Motor Corp.,
545 F. App'x 668 (9th Cir. 2013) .............................................11, 13

*Zeiger v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021)………………………………. 17

**Rules**

Federal Rule of Civil Procedure 8………………………………………..6, 17

Federal Rule of Civil Procedure 9……………………………….. 6, 7, 8, 9

1    Plaintiff James Bettles, individually and on behalf of the Nationwide and

2    California classes he seeks to represent, submits this memorandum of points and

3    authorities in opposition to Defendant Toyota Motor Sales, U.S.A., Inc.'s Motion to

4    Dismiss Plaintiff's Class Action Complaint [Dkt. No. 32] ("Motion").[1]

5    **I.    INTRODUCTION**

6        Toyota defrauded thousands of customers by *knowingly* selling and leasing the

7    2006-2020 Toyota Prius ("Class Vehicles" or "Vehicles")[2] with a Defective Heating,

8    Ventilation and Air Conditioning System ("Defective HVAC System") that promotes

9    microbial growth and causes foul and noxious odors to be emitted in the air through

10   the passenger compartment (the "Defect"). Some unsuspecting Class members have

11   described the odor as "an overpowering urine smell" (¶2),[3] while others, like Plaintiff,

12   describe the odor as smelling "like a pile of [dirty] socks that had been sitting too

13   long in a damp, warm locker room" (¶22).[4]

14       Although Toyota has internally recognized the HVAC odor problem, Toyota

15   conceals its knowledge of the Defect from consumers and, after foul odors develop

16   within the Defective HVAC System, Toyota then attempts to persuade customers that

17   that HVAC odor is normal and expected. As a result, Plaintiff and thousands of

18   similarly situated consumers did not receive the benefit of their bargain when they

19   purchased their Class Vehicles, which were represented to be standard vehicles but,

20   in fact, were sub-standard vehicles that can only be improved—not fixed—by

---

[1]   Citations to the memorandum of points and authorities in support of Defendant's Motion [Dkt. No. 32-1] appear as "Mem. at __."

[2]   Class Vehicles includes: 2006-2020 Toyota Prius, 2017-2020 Toyota Prius Prime, 2010-2015 Toyota PHV, 2012-2016 Toyota Prius C, and 2012-2017 Prius V.

[3]    References to "¶_" or "¶¶_" are to the Class Action Complaint [Dkt. No. 1] ("Complaint").

[4]    Due to a scrivener's error, paragraph 22 inadvertently stated the word "party" instead of the word "dirty." *See id*; *see also* ¶2 (Plaintiff "describ[ing] the odor as smelling like wet, rank, socks").

PLAINTIFF'S OPP. TO MOTION TO DISMISS
                                                                CLASS ACTION COMPLAINT

1    expending additional sums for required and previously undisclosed, expensive

2    maintenance to counteract odor developed within the Defective HVAC System.

3    Plaintiff thus bring this suit to recover for himself and the thousands of consumers

4    who have, likewise, been harmed and damaged.

5        The Court has the benefit of several court decisions that have addressed many

6    of the same issues present here. Indeed, the Defect at issue in this case is the same

7    defect that was at issue in *Stockinger v. Toyota Motor Sales USA Inc.*, No. LACV 17-

8    00035-VAP (KLSx), 2017 U.S. Dist. LEXIS 224071 (C.D. Cal. Jul. 7, 2017), which

9    among other vehicles, involved the 2010-2015 Toyota Prius. In that case, the Court

10   largely rejected the same arguments made by Toyota in support of its bid to dismiss

11   the plaintiffs' claims. *See Id.* at *18, 39-40, 61 (C.D. Cal. July 7, 2017) (finding that

12   "Plaintiffs have (1) adequately alleged a defect and (2) adequately alleged Plaintiffs'

13   vehicles' HVAC systems are plagued by the defect" and upholding claims for breach

14   of implied warranty and violations of the California Consumers Legal Remedies Act

15   ("CLRA") to the extent plaintiffs sought damages, which Plaintiff seeks here ¶186.

16   Those claims, as well as the plaintiffs' claims for violations of the Song-Beverly Act,

17   also survived Toyota's challenges at summary judgment. *See Stockinger v. Toyota*

18   *Motor Sales U.S.A., Inc.*, No. 217CV00035VAPKSX, 2019 U.S. Dist. LEXIS 63066,

19   at *27 (C.D. Cal. Mar. 8, 2019).

20       The Defect at issue here is also the same defect that was at issue in *Cardenas*

21   *v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090 (S.D. Fla. 2019), which, focused on a

22   subset of the vehicles at issue in *Stockinger*—the 2012-2017 Toyota Camry—and

23   where the court also largely rejected Toyota's motion to dismiss. *Id.* at 1097, 1101.

24   Many of the plaintiffs' claims went on to survive summary judgment (*see Cardenas*

25   *v. Toyota Motor Corp.*, 2021 U.S. Dist. LEXIS 187927 (S.D. Fla. Sept. 30, 2021)),

26   and the court in that case recently certified a class of consumers who purchased a

27

28

1  2012-2014 Toyota Camry under Florida's Deceptive and Unfair Practices Act (*see*
2  *Cardenas v. Toyota Motor Corp.*, 2021 U.S. Dist. 233135 (S.D. Fla. Dec. 6, 2021)).

3  As Judge Olguin recognized in a similar case against Defendant: "Toyota
4  cannot turn a blind eye (or a pinched nose) to the many reports of noxious and foul
5  odors emitted by the Camry's HVAC system." *Salas v. Toyota Motor Sales, U.S.A.,*
6  *Inc.*, No. 15-cv-8629 FMO, 2016 U.S. Dist. LEXIS 195222, at *30 n.11 (C.D. Cal.
7  Sept. 27, 2016). The same is true with regard to the Toyota Prius, as recognized by
8  this Court in *Stockinger*.

9  Once again, at this stage, Toyota's Motion is due to be denied.

10  ## II.    FACTUAL BACKGROUND

11  The Class Vehicles are equipped with a Defective HVAC System that
12  promotes and emits foul and noxious odors and/or mold and other contaminants into
13  the air. ¶2. Specifically, the Defective HVAC System fails to adequately remove
14  water from the Defective HVAC Systems' evaporators and surrounding enclosures,
15  thus causing a moist environment that promotes foul odors and microbial growth.
16  ¶¶2, 40. As cold refrigerant passes through and into the Defective HVAC System's
17  evaporator, it absorbs heat from the air and produces liquid water as the air is
18  dehumidified. ¶39. A properly functioning HVAC system will drain the condensed,
19  collected water through a rubber hose onto the ground. *Id*. However, the Defective
20  HVAC system fails to adequately drain this condensed water, aggravating the
21  tendency of the mold growth and causing foul and noxious odors to be emitted from
22  the Defective HVAC system from pollen, debris, and other contaminants that become
23  trapped in the undrained water. ¶40.

24  Notably, in 2004, the Institute of Medicine ("IOM") found there was sufficient
25  evidence to link indoor exposure to mold: with upper respiratory tract symptoms,
26  coughing, and wheezing in otherwise healthy people; with asthma symptoms in
27  people with asthma; and with hypersensitivity pneumonitis in individuals

28

susceptible to that immune-mediated condition. ¶41. The IOM also found limited or suggestive evidence linking indoor mold exposure and respiratory illnesses in otherwise healthy children. *Id.* Other studies have shown a potential link between mold exposure and the development of asthma in children. *Id.* In addition, according to the WHO's Guidelines for Indoor Air Quality: Dampness and Mold, "[m]icrobial pollution involves hundreds of species of bacteria and fungi that grow indoors when sufficient moisture is available" and "[e]xposure to microbial contaminants is clinically associated with respiratory symptoms, allergies, asthma and immunological reactions." ¶42.

Plaintiff purchased a new 2016 Toyota Prius on December 3, 2016, at an authorized Toyota dealer in Sacramento, California (¶17), and began smelling a foul odor emanating from the air-conditioning vents of his Vehicle within a few months of his purchase (¶20). In Spring 2017, when Plaintiff first brought his Class Vehicle to the dealership to complain about the odor caused by the Defect, the service representative stated that he could not find anything wrong with his Vehicle's HVAC system. ¶20. When Plaintiff brought his Vehicle to the dealership for a second time, in or around December 2017, dealership personnel, once again, told Plaintiff they could not find anything wrong his Vehicle's HVAC system, and were unable to provide any information as to the cause of the foul odor (¶23)—even though Toyota had issued a technical service bulletin titled "HVAC Odor Maintenance" that specifically addressed the Defect in his model year Class Vehicle (¶54). Notably, the dealership's supervisor advised Plaintiff that the warranty issued with his Vehicle would *not* cover the Defect (¶24), despite admitting the dealership had received "thousands of similar complaints about smells from these kinds of cars, and that there is no fix" (¶26).

Indeed, Toyota has long-known of the potential for HVAC odor in its vehicles, and specifically of the Defect in the Class Vehicles. As early as 1997, Toyota issued

a TSB that explicitly acknowledged the presence of microbial grown tin the HVAC evaporator caused by dampness in the housing, describing the result as a "musty odor . . . emitted from the air conditioning system of some vehicles which are usually operated in areas with high temperature and humidity." ¶50. By 2009, Toyota issued a TSB that specifically related to HVAC odors for 2004-2008 model year Prius and 2007-2010 model year Camry vehicles, which stated: "Some Camry, Camry HV, and Prius models may exhibit an intermittent HVAC system odor. A newly designed evaporator sub-assembly has been made available to decrease the potential for HVAC odor." ¶51.

In 2013, the TSB was revised to cover Prius and Camry vehicles through model year 2014, and explicitly informed dealers that "*there is no way to eliminate these odors*." ¶53. According to analysis of HVAC odor conducted by Toyota, the worst vehicle *across all of Toyota's vehicle lines* around that time was the Prius, with *11.88% of Prius owners reporting an issue with HVAC odor in their vehicles— almost twice the number of Camry owners that reported the same issue*. ¶75. Toyota updated its TSB in 2015 to include model year 2015 Prius and Camry vehicles and, again, in 2016, to include model years 2016-2017 of those vehicles. ¶54. In 2020, Toyota issued another TSB covering model year 2016-2020 Prius vehicles. *Id.* In addition, consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") evidence that Toyota refused to remedy the Defective HVAC System since at least June 2002 and, furthermore, indicate that the "noxious and foul odors" described are caused by mold growth in the Class Vehicle's HVAC system. ¶60.

Yet, Toyota failed to disclose the Defect to Plaintiff and Class members prior to their Class Vehicle purchases; thus, Plaintiff and Class members paid more for their Vehicles than they would have had the known of the Defect and suffered other actual damages, including but not limited to, out-of-pocket expenses, diminished

1    value of their vehicles, and exposure to foul, noxious, and/or toxic odors and mold

2    and other contaminants. ¶¶29, 44, 89-93. Accordingly, Plaintiff brings this lawsuit

3    seeking recovery on his own behalf and on behalf of similarly situated Class

4    members.

5    **III.    LEGAL STANDARD**

6         Rule 8(a) requires "a short and plain statement of the claim showing that the

7    pleader is entitled to relief." *Eason v. Roman Catholic Bishop of San Diego*, 414 F.

8    Supp. 3d 1276, 1279 (S.D. Cal. 2019).[5] "To survive a motion to dismiss, a complaint

9    must contain sufficient factual matter, accepted as true, to state a claim to relief that

10   is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads

11   factual content that allows the court to draw the reasonable inference that the

12   defendant is liable for the misconduct alleged." *Id.* Dismissal "is proper only where

13   there is no cognizable legal theory or an absence of sufficient facts alleged to support

14   a cognizable legal theory." *Id.* at 1279.

15        In addition, "only allegations (averments) of fraudulent conduct must satisfy

16   the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent

17   conduct need only satisfy the ordinary notice pleading standards of Rule 8(a)." *Vess*

18   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Moreover, omission-

19   based claims "can succeed without the same level of specificity required by a normal

20   fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal.

21   2007).

22   **IV.    ARGUMENT**

23        Toyota does not argue that Plaintiff has failed to alleged a defect in the Class

24   Vehicles; nor could it given Plaintiff's detailed allegations regarding the Defective

25   HVAC System (*see, e.g.*, ¶¶38-40, 49-55) and this Court's prior rulings in *Stockinger*,

26

27   [5]   Unless otherwise noted, all internal citations have been omitted and emphasis
     added.

28

the motion to dismiss and summary judgment stages. *See Stockinger*, 2017 U.S. Dist. LEXIS 224071; *Stockinger*, 2019 U.S. Dist. LEXIS 63066; *see also Cardenas*, 418 F. Supp. 3d 1090; *Cardenas*, 2021 U.S. Dist. LEXIS 187927. In *Stockinger*, *supra*, this Court upheld claims under California law for violations or the Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA"), and Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), as well as for breach of warranty. Plaintiff sufficiently states those claims, here, as further discussed below.[6]

### A.  PLAINTIFF STATES CLAIMS FOR VIOLATIONS OF THE UCL AND CLRA

Although it implicitly acknowledges that Plaintiff sufficiently alleged the HVAC systems in the Class Vehicles are defective, Toyota argues that Plaintiff's UCL and CLRA claims fail because they lack the specificity required by Rule 9(b). Toyota also argues it had no duty to disclose the Defective HVAC System in the Class Vehicles to Plaintiff and Class members prior to their Vehicle purchases. Toyota is wrong on both counts.

### 1.  <u>Plaintiff's Allegations Satisfy Rule 9(b)</u>

Rule 9(b) requires that Plaintiff "identify the who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Claims based on an alleged fraudulent omission or concealment "can succeed without the same level of specificity required by a normal fraud claim." *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 U.S. Dist. LEXIS 116836, at *9 (C.D. Cal. Feb. 22, 2012).

---

[6]  Plaintiff voluntarily dismisses his claims for fraudulent concealment (Count I) and for violations of the Magnuson-Moss Warranty Act (Count III).

"[T]o plead the circumstances of omission with specificity [a] plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.'" *Id.* at *9.

This Court—including when analyzing the ***exact same Defective HVAC System in the Class Vehicles here***—has repeatedly found that allegations describing the alleged defect, explaining how the alleged defect can harm customers, and stating that the defendant failed to disclose the defect, are sufficient to meet the Rule 9(b) standard. *See Stockinger*, 2017 U.S. Dist. LEXIS 224071, at *51 (finding plaintiffs' allegations regarding the exact same defect alleged in this case satisfied Rule 9(b)); *see also Ford v. Ford Motor Co.*, No. CV 13-8335 PSG (SSx), 2014 U.S. Dist. LEXIS 196447, at *21 (C.D. Cal. Jan. 17, 2014). Plaintiff's allegations satisfy this pleading requirements and further describes the representations he relied on to make his purchase that failed to include information regarding the *known* Defect. ¶¶2, 6-8, 18-19.

Citing *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011), Toyota argues that Plaintiff impermissibly "lumps two Toyota entities into a single Defendant…and then asserts nearly all its allegations against that one undifferentiated (and non-existent) entity." Mot. at 7. But this argument fails too. Plaintiff's allegations are distinguishable from those alleged in that case. In *Toyota*, the Court dismissed the plaintiffs' UCL and CLRA claims for lack of particularity because the allegations did not specify which of the five defendants made the representations or omission or where the plaintiffs saw them. *Id.* at 923-24. Specifically, the Court found that the foreign plaintiffs did "not allege a connection between specific Toyota Defendants and advertisements disseminated outside of the United States." *Id.*

Here, Plaintiff sued only two defendants, and Toyota *certainly* knows which allegations pertain to it since these exact issues have been raised in *Salas*, *Stockinger*, and more recently, *Cardenas*. ¶¶65, 69. Accordingly, Plaintiff's allegations are sufficient to satisfy Rule 9(b)'s heightened pleading requirements. Toyota's Motion should be denied on this basis.

## 2. <u>Toyota Had a Duty to Disclose the Defect.</u>

Contrary to Toyota's argument, Plaintiff's UCL and CLRA do not require affirmative misrepresentations. The UCL imposes liability on manufacturers that fail to disclose material information that they are under a duty to disclose. *See Becerra v. Gen. Motors LLC*, No. 15-cv-2365, 2017 WL 951028, at *9-11 (S.D. Cal. Mar. 10, 2017). Similarly, the CLRA "imposes liability on a party that omits a material fact to a consumer, defined as a fact that 'a reasonable consumer would deem . . . important' and 'would certainly attach importance to the disclosure of.'" *Id*. (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011)).

Citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), Toyota argues "the Ninth Circuit recently made clear that a duty to disclose under California law does not exist unless the alleged defect affects the central function of the product or causes an unreasonable safety hazard." Mot. at 8. However, there is a distinction "between (1) nondisclosure of defects that manifest before the end of a seller's warranty, and (2) nondisclosure of defects that do not manifest until after the warranty expires." *Stockinger*, 2017 U.S. Dist. LEXIS, at *58.

To state a claim for failure to disclose a defect that manifests *before* the end of the seller's warranty, a plaintiff must allege that the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff, ***irrespective of whether the defect causes a safety hazard****. See id.*; *see Salas*, 2016 U.S. Dist. LEXIS 195222, at *25 (finding safety concern was not required to establish duty to disclose since HVAC defect manifested during the warranty period). A defect

is in the exclusive and superior knowledge of a seller if the seller "knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins*, 202 Cal. App. 4th at 256, as modified (Dec. 28, 2011).

In other words, "a plaintiff can establish that a duty exists if she alleges facts showing that the defendant knew of the alleged defect and did nothing to fix it or alert customers to its existence." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010). Here, as in *Stockinger*, Plaintiff alleges his Class Vehicle was within the express warranty period at the time the HVAC Defect manifested in his Vehicle. ¶¶18, 21-23. Accordingly, Plaintiff sufficiently alleges that Toyota had a duty to disclose material facts regarding the Defective HVAC System, notwithstanding its safety implications. *See Stockinger*, 2017 U.S. Dist. LEXIS, at *51-52. Moreover, and contrary to Toyota's suggestion, Plaintiff's allegations demonstrate that the Defect alleged ***does*** affect the central function of the Class Vehicles, and as the Court made clear in *Stockinger*, "whether HVAC odor undermines the central function of Class Vehicles is a triable question of fact." 2020 U.S. Dist. LEXIS 49943, at *21.

Accordingly, Plaintiff has sufficiently alleged that Toyota had a duty to disclose the Defective HVAC System prior to his Class Vehicle purchase, such that its failure to do so is actionable under the UCL and CLRA.

## B. PLAINTIFF STATES CLAIMS FOR BREACH OF WARRANTY

Toyota's arguments for dismissal of Plaintiff's claims for breach of express and implied warranty are unavailing. As demonstrated below, Plaintiff sufficiently states his claims for breach of warranty under California law and, therefore, Plaintiff has also sufficiently stated his warranty claims under the Song-Beverly Act. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (holding plaintiff adequately pled a claim under Song-Beverly Act by adequately alleging a claim for breach of the implied warranty of merchantability).

While the order on Toyota's motion to dismiss in *Stockinger* does not refer to

a claim under the Song-Beverly Act, Toyota ignores that such claims survived its motion for summary judgment filed later in that case. *See Stockinger*, 2019 U.S. Dist. LEXIS 63066, at *24 ("Although Defendant focuses on the requirement of providing safety, it ignores the requirement that the vehicle needs to be substantially free of defects. . . . A reasonable jury could find that an HVAC system that produces the odors Plaintiffs describe is not substantially free of defects; accordingly, the Court DENIES summary judgment as to these claims.").

### 1. <u>Toyota Breached its Express Warranties</u>

The Defective HVAC System is covered by Toyota's New Vehicle Limited Warranty, which accompanied Plaintiff's Class Vehicle purchase. ¶18. Toyota's own service bulletins that related to HVAC odors for Class Vehicles even admit that Toyota's [ultimately useless] attempt to "repair" the Defect was covered under the Toyota Comprehensive Warranty. ¶¶51-52. Toyota's mischaracterization of Plaintiffs' allegations as solely concerning a design defect (Mot. at 12-13) does not control whether his Complaint survives.

At "the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co.*, No. 08-cv4825, 2010 U.S. Dist. LEXIS 32584, at *17 (D.N.J. Mar. 31, 2010); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. Nov. 30, 2010) ("*Toyota UIA*").

Here, while Plaintiff does allege that the Defective HVAC System is defectively designed, Plaintiff also alleges that the noxious and foul odors could also be caused by defects in materials, workmanship, or manufacture. Toyota's cited cases are easily distinguishable on this basis. *Compare* ¶¶43, 160, 162, 203, *with Troup v.*

*Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (finding plaintiffs failed to adequately allege a material or workmanship defect), *Sater v. Chrysler Grp.*, No. EDCV 14-00700-VAP, 2015 U.S. Dist. LEXIS 21022, at *12-13 (C.D. Cal. Feb. 20, 2015) (finding plaintiff's "offhand references to manufacturing defects" were insufficient to sufficiently allege a manufacturing defect), and *Gertz v. Toyota Motor Corp.*, No. CV 10-1089-PSG (VBKx), 2011 U.S. Dist. LEXIS 94183, at *10-11 (C.D. Cal. Aug. 22, 2011) (finding the complaint made clear the claim concerned an alleged defect in design).

Plaintiff clearly alleges that condensed water is collecting in the evaporator and surround enclosure when it is supposed to drain out through a hose onto the ground. ¶¶39, 40. While the trapped water may be caused by a defective design, discovery is needed to determine whether the water could also become trapped due to defects in the manufacturing process or particular materials that were used in the HVAC assembly. To the extent this Court finds that Toyota's express warranty is ambiguous, it "must be construed to guarantee against both manufacturing and design defects." *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Accordingly, Plaintiff's claim for breach of express warranty should not be dismissed based on the HVAC System's alleged design defect and Toyota's Motion as it relates to Plaintiff's breach of express warranty claim should be denied.[7]

## 2.   <u>Toyota Breached its Implied Warranties</u>

Under California law, the implied warranty of merchantability requires that products possess "the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). With respect to automobiles, fitness for ordinary use requires that the vehicle do more than just "provide[] transportation

---

[7]  The Court dismissed the California breach of express warranty claim in *Stockinger* due to lack of notice. 2017 U.S. Dist. LEXIS 224071, at *21-23. Toyota did not raise lack of notice as a basis for dismissal of Plaintiff's claims here.

from A to point B." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007). A vehicle that smells is not fit for its intended purpose. *See id.* at 24 (noting that "a vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose"); *see Salas*, 2016 U.S. Dist. LEXIS 195222, at *33-35 (rejecting argument that Toyota Camry was fit for ordinary purpose, and sustaining implied warranty claim, where HVAC system emitted noxious and foul odors). The standard for determining whether a product runs afoul of the implied warranty of merchantability requires a factual finding as to whether the product is "fit for the ordinary purposes for which such goods are used." *Stockinger*, 2017 U.S. Dist. LEXIS 224071, at *38. Accordingly, resolution of the issue is inappropriate at the motion to dismiss stage.

Notwithstanding, Plaintiff alleges the HVAC System in his vehicle emits "foul, noxious, and/or toxic odors" and blows mold and other contaminants into the air circulated through the HVAC System. ¶¶1, 2, 38-40. As the Court noted in *Stockinger*, "[n]one of the cases cited by Defendant indicate it is permissible for the Court to rule—on a motion to dismiss—that a "noxious and foul odor,' which Plaintiffs allege is present in each of their vehicles, cannot show a car is unfit for its 'ordinary purpose.'" 2017 U.S. Dist. LEXIS 224071, at *38. The same is true in this case. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299 (1995), as modified on denial of reh'g (Sept. 21, 1995) (granting a motion for class decertification on the grounds that only "a small percentage of" the plaintiffs cars rolled over as a result of a defective as a result of a defective design; *Troup*, 545 F. App'x at 669 (holding a defect which "merely required [plaintiffs] to refuel more often" but did not "drastically reduce [a car's] mileage range" was insufficient to state a claim); *Sanchez v. Kia Motors Am., Inc.*, No. 820CV01604JLSKES, 2021 U.S. Dist. LEXIS 200707, at *12 (C.D. Cal. Aug. 9. 2021) (dismissing implied warranty of merchantability claim where no plaintiffs alleged that the allegedly defective

windshield cracked while they were driving or that it impeded their view while driving); *Blissard v. FCA US LLC*, No. LA CV18-02765 JAK (JEMx), 2018 U.S. Dist. LEXIS 201725, at *19-20 (C.D. Cal. Nov. 9, 2018) (finding plaintiff's allegations were inadequate with respect to whether the alleged defect "compromise[s] the vehicle's safety, render[s] it inoperable," or otherwise "drastically undermine[s] the ordinary operation of the vehicle").

Toyota's attempt to characterize Plaintiff's complaints of the "foul, noxious, and/or toxic odor" as a mere "inconvenience" is unavailing. Mot. at 15. As the Court held in *Stockinger*, "in the absence of any case law holding that as a matter of law 'noxious and foul odors' cannot support a claim for breach of the implied warranty of merchantability, the Court cannot make such a factual finding at the pleading stage." 2017 U.S. Dist. LEXIS 224071, at *39. Accordingly, Plaintiffs here has sufficiently alleged his vehicle is not fit for the ordinary purposes for which such goods are used. *See Stockinger*, 2017 U.S. Dist. LEXIS 224071, at *39-40 (finding plaintiffs sufficiently alleged vehicles were not fit for ordinary purpose for which such goods are used as a result of the safe HVAC Defect asserted in this cases).

Toyota's argument that Plaintiff's implied warranty claim should be dismissed for lack of privity also fails. Mot. at 13-14. Here, Plaintiff is a new vehicle purchaser that purchased his Class Vehicle at one of Toyota's authorized dealerships (¶17)— the only dealers in the United States that are authorized to sell Toyota's new vehicles. In that context, the Complaint specifically alleges that "Plaintiff and each of the other Class members have had sufficient direct dealings with either Toyota or its agents (Dealerships) to establish privity of contract between Toyota, on the one hand, and Plaintiff and each of the other Class members, on the other hand." ¶150. Toyota's attempt to analogize Plaintiff's allegations here with those of the plaintiff in *Glassburg v. Ford Motor Co.*, No. 2:21-cv-01333-ODW (MAAx), 2021 U.S. Dist. LEXIS 211786 (C.D. Cal. Nov. 2, 2021), should be rejected. The plaintiff there,

unlike Plaintiff here, purchased a *certified pre-owned* Ford vehicle from a Ford dealership. 2021 U.S. Dist. LEXIS 211786, at *1. Despite that fact, the plaintiff's complaint alleged a single paragraph that sought to establish privity between himself and Ford based on the manufacturer-consumer relationship, and alternatively sought to establish that privity was not required due to the third-party beneficiary exception. *Id.* at *17. Ford moved to dismiss the plaintiff's claim for breach of implied warranty of merchantability, arguing lack of privity. *Id.* In opposing Ford's motion, the plaintiff failed to address the privity issue and instead focused only on the third-party beneficiary exception. *Id.* Accordingly, this Court found that the plaintiff's failure to address the issue was a concession that, but for the third-party beneficiary exception to the privity requirement, the lack of privity would otherwise defeat the plaintiff's claim. *Id.* at *17-18. Plaintiff has made no such concession here.

Indeed, as the Court recognized in *Glassburg*, "[a] buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Id.* at *17. The plaintiff in *Glassburg* could not sufficiently allege privity with Ford because the parties were not in adjoining links of the distribution chain. *See id.* at *1. The plaintiff purchased a *used* Ford vehicle that was presumably sold by a Ford dealership to a third party, who then sold the vehicle back to a Ford dealership, who then sold the used vehicle to the plaintiff. *See id.* In contrast, Plaintiff has sufficiently alleged privity with Toyota because he asserts facts showing that he and Toyota are in adjoining links of the distribution chain. Plaintiff purchased a new Toyota vehicle directly from an authorized Toyota dealership, which is irrefutably an agent of Toyota for purposes of new motor vehicle sales. ¶¶17, 150. Accordingly, Plaintiff has alleged that he and Toyota are in *direct* privity and may state a claim for breach of implied warranty of merchantability against Toyota.

Nonetheless, Plaintiff's allegations regarding his third-party beneficiary status are sufficient to assert a claim for breach of the implied warranty of merchantability.

¶150; *see Stockinger*, 2017 U.S. Dist. LEXIS 224071, at \*40-41 (finding plaintiffs' implied warranty claims relating to same HVAC Defect in Toyota vehicles did not fail for lack of privity where plaintiffs alleged they "and members of the Classes purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party"); *Toyota UIA*, 754 F. Supp. 2d at 1185 (when buyers allege "they purchased vehicles from a network of dealers who are agents of Defendants" and that the buyers "were the intended consumers," they have sufficiently alleged they are third party beneficiaries). Although the Court rejected the third-party beneficiary theory in *Glassburg*, the plaintiff in that case purchased a *used vehicle*, unlike Plaintiff who purchased a new vehicle from one of Toyota's exclusive dealers. Accordingly, *Glassburg* is distinguishable and does not require dismissal of Plaintiff's implied warranty claim.

## C. PLAINTIFF HAS SUFFICIENTLY STATED EQUITABLE CLAIMS IN THE ALTERNATIVE

Citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Toyota argues that Plaintiff's UCL claim, unjust enrichment claim, and requests for equitable relief under the CLRA are barred because Plaintiff has alleged an adequate remedy at law. Mot. at 20. Not so. In *Sonner*, the Ninth Circuit reaffirmed the principle that plaintiffs seeking equitable remedies must first show the court that no adequate remedy exists at law. *Id.* at 844. Here, however, in connection with his UCL and CLRA claims, Plaintiff seeks a prospective injunction enjoining Toyota's deceptive and unlawful practice. ¶¶170, 184. This injunctive relief is not an available remedy at law, and its presence in the Complaint distinguishes this case from *Sonner*, 91 F.3d at 842 ("Injunctive relief is not at issue."). Accordingly, plaintiff has sufficiently alleged an inadequate remedy at law with respect to its claims for equitable relief under the UCL and CLRA. *See Glassburg*, 2021 U.S. Dist. LEXIS 211786, at \*22

1  (citing *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal.
2  2021) ("[M]onetary damages for past harm are an inadequate remedy for the future
3  harm [at which] an injunction under California consumer protection law is aimed.")).

4      With respect to Plaintiff's unjust enrichment claim, Rule 8(a)(3) specifically
5  allows a party to plead in the alternative. *See* Fed. R. Civ. P. 8(a)(3). Indeed, courts
6  within the Ninth Circuit routinely permit plaintiffs to alternatively plead both legal
7  and equitable claims, such as unjust enrichment. *See, e.g.*, *Longest v. Green Tree*
8  *Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015). Accordingly, dismissal
9  of Plaintiff's alternative claim for unjust enrichment would be inappropriate on a
10 motion to dismiss.

11      **D.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE**
12          **OF LIMITATIONS**

13      Toyota contends that because Plaintiff alleges he suffered injury when he
14 purchased his vehicle (because he would not have purchased it or he would have paid
15 less had the alleged HVAC defect been disclosed), his claims began to run on the
16 date Plaintiff purchased and received his Vehicle (*i.e.*, December 19, 2016). Mot. at
17 17. Toyota further contends the statute of limitations cannot be tolled by either the
18 delayed discovery rule and/or the fraudulent concealment tolling doctrine. *Id.*

19      As with Toyota's other arguments, its flawed statute of limitations argument
20 was expressly rejected by courts addressing motions to dismiss claims for the same
21 Defective HVAC System in Class Vehicles. *See Stockinger*, 2017 U.S. Dist. LEXIS
22 224071, at *69-70 (finding plaintiffs alleged facts showing the statute of limitations
23 should be tolled where plaintiffs alleged they did not discover the defect as a result
24 of Toyota's concealment of material facts regarding the defect); *Cardenas*, 418 F.
25 Supp. 3d at 1107-08 (refusing to dismiss claims where plaintiffs alleged the statute
26 of limitations was tolled because Toyota's "knowing and active concealment" of the
27 defect prevented plaintiffs from reasonably discovering the defect or Toyota's

28

deception regarding the defect). Accordingly, this Court should also reject Toyota's statute of limitations argument in this case.

Toyota contends that Plaintiff was on inquiry notice of his claims no later than January 2017 because *Stockinger* was pending in this District, and Plaintiff could have "run a Google search to find [the] lawsuit." *Id.* at 18-19. The facts in the cases cited by Toyota in support of this claim are entirely distinguishable from the facts here. In those cases, the courts found the evidence could support only one reasonable conclusion, *i.e.*, that the plaintiff actually discovered or should have discovered the facts giving rise to their claims. *See Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61, 71 Cal. Rptr. 3d 415 (2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery doctrine rule is a question of fact unless the evidence can support only one reasonable conclusion.").

For example, in *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203 (9th Cir. 2007), the court found that based on the evidence, it was "simply not possible" that the appellant, "a knowledgeable and sophisticated manufacturer of asbestos products and a defendant in hundreds of lawsuits," "was not on inquiry notice of its claim," where "information, including government regulations, books, and news articles, that have elaborated on the dangers associated with all types of asbestos" were publicly available. *Id.* at 1206. Likewise, in *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496 (E.D.N.Y. 2008), the court ruled that the investors' securities fraud claims were time-barred because they were on notice of investment dangers regarding a certain drug long before the statute of limitations began to run; specifically, there was evidence of "[n]umerous and substantial publicly available warnings about the facts and theories underlying plaintiffs' claims," including "extensive available medical research, media coverage, court filings, regulatory decisions and securities analyst reports." *Id.* at 534.

1    Here, Plaintiff cites *Stockinger* in his Complaint in support of his claim that

2    Toyota knew about the Defective HVAC System in the Class Vehicles since at least

3    January 3, 2017, when that action was filed. ¶65. Yet, Toyota does not claim that his

4    model year Class Vehicle was involved in that action—it was not. Even if Plaintiff

5    knew of *Stockinger* prior to engaging counsel for purposes of prosecuting this action,

6    Toyota staunchly disavowed that there was a Defect in the HVAC System, and

7    Toyota maintains this position, still today. Plaintiff does not allege when he became

8    aware of the *Stockinger* case or that he knew of its existence at any time prior to filing

9    this action. Accordingly, in the absence of conclusive evidence establishing when

10   Plaintiff reasonably should have discovered the facts underlying his claims, the Court

11   should not make such a factual finding at the pleading stage.

## V.   **CONCLUSION**

Based on the above arguments, and with the voluntary dismissal of Plaintiff's claims for fraudulent concealment and violations of the Magnuson-Moss Warranty Act, Plaintiff respectfully requests this Court deny Toyota's Motion in its entirety.[8]

Dated: December 20, 2021.          Respectfully submitted,

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

/s/ *Jason H. Alperstein*
Jason H. Alperstein (*admitted pro hac vice*)
alperstein@kolawyers.com
Jeff Ostrow (*admitted pro hac vice*)
ostrow@kolawyers.com
Kristen Lake Cardoso, Bar No. 338762
cardoso@kolawyers.com
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

---

[8]  To the extent the Court deems Plaintiff's Complaint deficient, Plaintiff respectfully requests leave to amend to pursuant to Rule 15.

**EDELSBERG LAW, P.A.**
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
1925 Century Park E #1700
Angeles, California 90067
Telephone: (310) 438-5355

**GORDON & PARTNERS, P.A.**
Steven G. Calamusa (*admitted pro hac vice*)
scalamusa@fortheinjured.com
Geoff S. Stahl (*admitted pro hac vice*)
gstahl@fortheinjured.com
Rachel A. Bentley (*admitted pro hac vice to be*)
rbentley@fortheinjured.com
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050

PLAINTIFF'S OPP. TO MOTION TO DISMISS
CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

*/s/ Jason H. Alperstein*

Jason H. Alperstein
KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
alperstein@kolawyers.com

PLAINTIFF'S OPP. TO MOTION TO DISMISS
CLASS ACTION COMPLAINT